THE STATE v. SEAY.

1. A person who steals property in a sister State, and brings it here, is
   liable to be indicted under the laws of our State.
2. And the statute providing for the punishment of such offence here, is
   not unconstitutional.
3. The indictment under that statute must charge that the possession of
   the property in this State was felonious.
4. In an indictment, nothing can be taken by an intendment.

AQUILLA SEAY was indicted in the Circuit Court of Mo-
bile county, at March term 1830, for larceny, and for
bringing property to that county stolen by him in Geor-
gia.    The indictment contained five counts.    The second
count charged that "Aquilla Seay, late of the State of
Alabama and county of Mobile, laborer, on the 20th day
of March, 1830, with force and arms, in the State of Geor-
gia, to wit: at the city of Augusta, in the county of Rich-
mond in said State, and out of the State of Alabama, one
carriage commonly called a barouche, of the value of one
hundred dollars, and harness for two horses of the value
of fifty dollars, being altogether of the value of one hun-
dred and fifty dollars, of the goods and chattels of one
Thomas G. Hall, then and there found and being, then
and there feloniously did steal, take, and carry away; and
afterwards, to wit: on the 13th day of April, 1830, at the
county of Mobile in the State of Alabama, the said Aquil-
la Seay, the said carriage called a barouche of the value
of one hundred dollars, and the said harness for two horses
of the value of fifty dollars, of the goods and chattels of
the said Thomas G. Hall as aforesaid, and feloniously sto-
len, taken and carried away as aforesaid by him the said
Aquilla Seay, in the State of Georgia and out of the State
of Alabama as aforesaid, did have in the possession of him

JULY 1830.

The State
v.
Seay.

the said Aquilla Seay, to wit: on the day and year last aforesaid, to wit: in the county of Mobile and State of Alabama aforesaid, contrary to the form of the statute in such cases made and provided." On this count the jury found the prisoner guilty, but not guilty as to the other counts. A motion was made by the prisoners counsel to arrest the judgment, on the ground that he was not legally punishable for the offence charged in the second count, by the laws of this State. The Judge presiding on the circuit conceiving the questions of law arising on the motion to be novel and difficult, referred them to this Court for decision.

*a* Laws of Ala. 221.

*b* See 2 Sec. 4 and 5 Art. of the Constitution of the United States.

*c* 2 Hawkins 325.

*d* Amendment to the Constitution of the United States Art. VI.

BAGBY, for the prisoner. We insist that the judgment should be arrested, because the prisoner is not found guilty of any offence which we can legally punish. The statute under which this count is framed, is in contravention with the constitutional rights of the prisoner, and is therefore void.*a* The Circuit Court of Mobile county can have no jurisdiction of this supposed offence. The indictment charges that an offence was committed in Georgia, within the jurisdiction of that State, and it is attempted to parcel out the offence and punish it here also, which this State has no right to do. It is an attempt to infringe upon the jurisdiction and rights of the State of Georgia.*b* If the taking in Georgia contitutes a substantive offence there; then it is not cognizable here, and we are bound to presume it is an offence there, as the common law must be supposed to govern. No indictment can be good unless it be laid to have been committed at some place, and within the jurisdiction of the Court; *c* a party has a constitutional right to process to compel the attendance of witnesses for his defence; how can he have process here to compel the attendance of witnesses from Georgia? How then can he defend himself when the taking is alleged to have been there, where the witnesses must be supposed to reside? Must he lose that right, and the benefit of the only witnesses which can be serviceable to him to shew his innocence?*d* Again, our constitution provides that no person shall be twice punished for the same offence. This indictment, and a conviction under it, would afford no protection against a second conviction in Georgia for the same offence, and unless it can have that effect, it is unconstitutional? If ti is not, by the effect of different statutes, a party might be here whipped and branded, in Georgia confined

in the penitentiary, and be finally hung in North Carolina for substantially one and the same offence. The statute does not make the act charged to have been committed a distinct offence, but treats it as a larceny, and punishes it as such; then there is no pretence even in the statute that it is a separate and different criminal act. In Butlers case, [a] where goods were stolen on the high seas, it was holden that the offender could not be punished in any county in England, although the goods were brought to England. In the case of the *State v. Brown*,[b] the Court in North Carolina decided that one who had stolen property out of the State, and brought it into that State, could not be punished there. In New York, the same decision was made. [c] Those authorities are certainly sound in principle.

JULY 1820.

The State
v.
Seay.

[a] 3 Inst. 113.
13 Rep. 53.

[b] 1 Haywood
Reports 100.

[c] 2 Johnsons
Rep. 477, 479

STEWART, for the State. The act provides that where property is stolen out of the State, and it is brought within it, and where the offender shall have and keep it in his possession in this State, he shall be punished. The question is whether the State has the right to pass such a law. It must be admitted that the State is sovereign, and that it has to the fullest extent the power to declare what shall be a public offence, and subject to punishment, and that it is the duty of the Legislature to protect its citizens from all injury, and the effect of bad example. This right is ample and uncontrollable, and cannot be abridged or restricted by the enactments or laws of any other State. The framers of the statute conceived it to be an evil, to permit persons to have and to keep in their possession in this State, with impunity, property stolen elsewhere; the effect of permitting it would be demoralizing; it would prove an inducement for thieves to accumulate here, and give them the means and facility to cheat our citizens, by keeping the property till they could sell it, and defraud our people. The statute does not undertake to punish for the larceny, it is for having stolen goods in possession; the act of stealing, and the act of keeping, can be well distinguished; it is not attempting any thing against the rights or sovereignty of Georgia. When the prisoner placed himself under the jurisdiction of Alabama, he became bound to submit to its criminal laws, and to avoid doing that which was prohibited, at his peril. It was perfectly possible for him to steal property in Georgia, and when he came to the Alabama line, to leave it; he then would not be liable under our statute. This proves the two offences to be distinct, for

JULY 1830.

The State
v.
Seay.

*a* Hawk. P. C.
217. C. 33.
Sec. 52.

*b.* 1 Mass. R.
116.

*c* 2 Mass. R.
14.

*d* 3 Conn. R.
185.

*e* Laws of Ala.
207.

he may commit the one and avoid committing the other. The doctrine of the common law is, that the continuance of the asportation in each county is a new larceny, and that an indictment lies in any county where the goods are carried.[a]   The reason of the decision in Butler's case cited was, that it was the Courts of Admiralty which had jurisdiction of the offence, and not the Courts of common law. In the case of the *Commonwealth v. Cullins*[b] it was decided, that the carrying of goods stolen in one State into another, was the same as the asportation of goods from one county to another, and that the taker could be legally convicted of the larceny in the State where the goods were carried.   The point was again elaborately discussed in the case of the *Commonwealth v. Andrews*,[c] and upon much deliberation, the authority of the previous case was confirmed.   In Connecticut, the same doctrine has been held.[d]  The cases cited from 2nd Johnson's Reports and 1st Haywood, by the counsel for the prisoner, it is true are in conflict with these decisions: but all those cases were on indictments for larceny simply, not made under such a statute as ours; and even should the Court be of opinion that the latter are the best authorities, they do not in any way demonstrate that the State has not the power to declare the keeping in possession stolen goods, to be of itself a distinct offence.   Such statutes are common in England, for instance, those punishing persons having in their possession counterfeit money, and implements and tools for counterfeiting.   Indeed it is of absolute necessity that such statutes shall be passed.   Suppose a person steal a free negro in one State, and after keeping him a slave there for some time, he should bring him to this State, and continue to keep him and treat him as a slave, would not such an offence require punishment here?   By our statute[e] it is provided, that if a free person be stolen and sold as a slave, the offender shall suffer death; would the offender under this statute escape punishment if the negro so sold was stolen in another State? the same objection would certainly exist as to the impossibility of procuring witnesses for the prisoners defence from the sister State, and indeed it may exist in any case where the witness is absent.   The objection that a person shall not be twice punished for the same offence does not apply here.   It is not shewn that there ever has been any conviction in Georgia for this offence, so this would not be a second punishment; but the offences are distinct and different, and although our statute

affixes the same punishment as for a larceny, that does not necessarily make the offences the same.

BAGBY, in conclusion. The argument of the counsel for the State is founded on the very reverse of the golden rule, which prefers that ninety nine guilty persons shall escape punishment, than that one innocent one shall suffer. The common law doctrine that every new asportation is a new taking, by which an indictment can be tried in any county in England where the defendant is found in possession of the property, is wholly inapplicable here. There the criminal law in each county is the same; the jurisdiction of the Court extends all over England, so as to issue process and subpœnas to any county. But here it is entirely different; each State has its own laws, but the benign principles of the Constitution of the United States for the preservation of personal rights, control every State. It is said it is a distinct offence, but it is in fact only parcelling out one offence. Could the prosecution be sustained without proving a larceny in Georgia! certainly not. Would a conviction here bar a prosecution in Georgia? certainly not. Is it not one taking, and one conversion to the defendants own use? It certainly is. The statute itself considers it and punishes it as larceny. A great difficulty, and it is a constitutional one, is entirely unanswered, and it seems to me the objection is conclusive, that the prisoner cannot have process to compel the attendance of witnesses to attest his innocence. It is evident that the witnesses who reside where the taking is alleged to have taken place, are indispensable to a just and fair trial. It is for this reason that all judicial investigations of a criminal nature are required by our laws to be had where the offence is supposed to have been committed. It is a benign and just provision, which would be here violated.

By JUDGE COLLIER. The offence charged, and the form of the indictment, very materially suggest these questions for our examination.

1st. Can one who has committed a larceny in a sister State, and brought with him the property stolen into this, be punished under our laws?

2nd. If the facts supposed in the first question constitute an offence, is the indictment sufficient in point of law?

First. That an individual who has committed a lar-

ceny or other offence within the jurisdiction of this State, cannot for such offence be punished here upon common law principles, is a proposition to which we are prepared to yield our assent.   In the case of the *State v. Brown* [a] this point was decided.   In that case the prisoner was in- dicted for horse stealing; the proof shewed that the horse was stolen in the Territory south of the Ohio; upon which Judge Ashe remarked, "if the accused were tried and condemned here, or tried and acquitted here, would the sentence of this Court be pleadable in bar to an indict- ment preferred against him in the Territory south of the Ohio.   I think it would not, because the offence against the laws of this State and the offence against the laws of that country are distinct, and satisfaction made for the of- fence committed against this State, is no satisfaction for the offence committed against the laws there."   The learned Judge then continues to remark upon the quantum of pun- ishment and the variety of modes of its infliction which must be suffered for the same offence if a contrary doctrine was recognised, and concludes, that "it is against natural justice, and therefore" says he, "I cannot believe it to be law."

The same question came before the Supreme Court of New York in the case of the *People v. Gardner*, and in that of the *People v. Schenck.* [b]  In which cases, the Court re- marked, that when the taking is out of the State, the of- fence does not continue and accompany the possession of the thing stolen, as it does in the case where a thing is stolen in one county and the thief is found with the pro- perty in another; and that the accused could only be considered as flying from the justice of the State where the offence was committed.

A doctrine the reverse of that held in North Carolina and New York is maintained in Massachusetts and Con- necticut, *vide Commonwealth v. Cullins* [c] and the *State v. Ellis.* [d]   These authorities are referred to for the pur- pose of shewing what was the understanding of the law, apart from legislative enactment.   But we have a statute which expressly denounces as a fit subject of punishment, any individual who brings into this State property stolen in another jurisdiction, which is in these words.   "Be it enacted, &c., that any person or persons who shall steal or otherwise feloniously take any horse, or other goods and chattels, from any person, in any place out of this territory, and shall afterwards have the same or any part of such

JULY 1830.

The State
v.
Seay.

[a] 1 Hayw. R. 100.

[b] 2 Johns. R. 477, 479.

[c] 1 Mass. Rep. 116.
[d] 3 Conn. R. 185.

goods and chattels in his or their possession within this territory, may be indicted for horse stealing or other larceny, in whatever county he or they may be so found with such horse or other goods and chattels as aforesaid."

It is manifest from the reading of this act, that it extends to embrace the offence with which the accused is charged, unless it be rendered nugatory by constitutional inhibition, or narrowed in its operation by the application of the rules by which legislative acts are interpreted.

The affirmative of the first branch of the qualification of the proposition, is predicated upon the hypothesis, that the offence which the statute proposes to punish, was legally punishable by the Courts of Georgia, and that to permit the accused to be punished here, would be to inflict punishment twice for the same offence, in contravention of the amendments to the Constitution of the United States. [a]    [a] 5th article. This idea we believe is not well founded; the statute does not propose to punish for a larceny committed against the dignity of another sovereignty, but for the bringing into this State feloniously, the property stolen without its limits, whereby our citizens may be induced to become purchasers of the same, and thus be deprived of their substance, when it shall be reclaimed by the rightful owner.    Considered in this point of view, the main inducement of the Legislature to the enactment of the statute will appear quite rational and expedient.    No objection founded upon constitutional grounds will then suggest itself to the jurisdiction in which the prisoner was tried, and all objections to the statute, as conflicting with the restraints imposed by the constitution, will appear to be sufficiently answered. Our powers do not authorise us to institute an inquiry into the policy of the law; that was a fit topic for the consideration of the department which enacted it.    Our province is to inquire if it be reconcilable with the boundaries which the constitution has set to legislative action, this inquiry we have already made.

With regard to the second branch of the qualification we will remark, if the offence of which the prisoner is found guilty was capitally punished, we should incline to the opinion that he could not receive the judgment of death.    The statute it will be observed expresses "horses and other goods and chattels."    For the larceny of horses in contravention of the act, it would be competent to inflict any punishment authorised by law, however exorbitant, but for "other goods and chattels," in *favorem vitæ*,

17

the punishment of death could not be awarded. On this point, Blackstone in his Commentaries [a] recites a case strikingly analogous, in which it was held that the general words of a statute succeeding a specific description of an object of larceny, were inoperative. These are the authors words: "by the statute 14, George 2, chapter 6, stealing sheep or other cattle was made felony without benefit of clergy, but these general words "or other cattle," being looked upon as much too loose to create a capital offence, the act was held to extend to mere sheep." This punctilious strictness in the construction of penal statutes has never, so far as our examination into authority informs us, been extended to misdemeanors, and unless we could discover that inconvenience or injustice would be likely to result to one accused, by limiting its application to capital cases, we are not disposed to extend it to offences of a lower grade. No inconvenience can result by giving effect to the general words, for by referring to the common law, it may be ascertained what "goods and chattels" are the objects of larceny.

2nd We are induced to question the legal sufficiency of the count in the indictment on which the prisoner is found guilty. It charges substantially, that the prisoner did feloniously steal, take and carry away at the city of Augusta, in the county of Richmond, in the State of Georgia, and out of the State of Alabama, one carriage, &c., and that on the thirteenth of April, in the year of our Lord one thousand eight hundred and thirty, he had the same in the possession of him the said Aquilla Seay, to wit: on the day and year last aforesaid, to wit: in the county of Mobile and State of Alabama aforesaid, contrary to the form of the statute in such cases made and provided. Whether the possession of the prisoner in the county of Mobile was felonious, is a fact which the indictment does not allege. The asportation in Georgia may have been such as to render him liable to a conviction for a larceny there, and the possession in Mobile be rightful. The owner of the stolen property, before it was brought within the limits of this State, may have made a transfer of his right to the prisoner, or consented that he should carry it to Mobile. But regardless of fact, the Court must, in obedience to a well settled rule, make every presumption in favor of the prisoner, which the indictment will authorise, and this too even after verdict.[b]

Indictments can not be aided by intendment, but must

positively and explicitly state what the prisoner is called upon to answer, and the charge as alleged must be an offence against the laws.[a] The learned editor of Bacon's Abridgment remarks, that "every indictment ought to contain a complete description of such facts and circumstances as constitute the crime, without inconsistency or repugnancy."[b] And the author says "it is laid down as a good general rule, that in indictments as well as appeals, the special manner of the whole fact ought to be set forth with such certainty that it may judicially appear to the Court that the indictors have not gone upon insufficient premises."[c] "Neither is it always sufficient to pursue the words of a statute, unless in so doing you fully, directly and expressly allege the matter wherein the offence consists, without the least uncertainty or ambiguity.[d] Nor will the averment of *contra formam statuti* aid an indictment, defective in not charging with sufficient precision an offence legally punishable.[e] The rule deducible from these authorities is, that the indictment must contain all the essentials to constitute the offence, explicitly charged, and that they must not be left to inference, and hence it is manifest, that unless the prisoner could be punished for having in his possession feloniously or otherwise at Mobile, the property he had stolen in Georgia, he cannot be punished on the finding of the jury.

Again, the statute must be considered as introducing a new offence into our criminal code, for we have already remarked that the offence did not exist anterior to its passage; this being true, it would very materially seem that the remedy which the statute prescribes for its punishment should be strictly pursued; the statute declares "that any person or persons" charged with an offence against it "may be indicted for horse stealing or other larceny, in whatever county he or they may be so found with such horse, or other goods and chattels as aforesaid." Hence it appears that the bringing of the stolen property here was to be considered a new asportation, in whatever county the thief might be found with it in his possession, and that the indictment should be drawn for a larceny committed against the peace and dignity of this State, locating the taking and asportation in the county where the indictment is found. The language of the act is too plain to authorise any other interpretation, and this conclusion gains strength from the fact, that when property is stolen in one county and the thief is found with it in his possession in another,

JULY 1830.

The State
v.
Seay.

a 1 South 40.

b Wilson's Ed.
3 Vol. 553, n.

c Ib. 554 Reynolds v. the State, 2 Nott. and M. C. 365

d 3 Bacon Ab. 370.

e Comm. v. Morse, 2 Mass. R. 127

JULY 1830.  he may be indicted and found guilty in the latter, because in any county in which the property is found with him, there is a new taking.

The State
v.
Seay.

If however it appeared from the count on which the prisoner is found guilty, by positive allegation, that this possession in Mobile was felonious, we should feel disinclined to arrest the judgment, because then it would have stated with sufficient precision an offence known to the laws of the State.

Having examined the questions of law referred for our decision, our conclusions are, that the offence with which the prisoner is attempted to be charged, is one for which punishment may be inflicted. But because the indictment is insufficient, the judgment of the Court below must be arrested, and the prisoner remain in custody to await another trial, unless he be otherwise discharged by due course of law.

By JUDGE CRENSHAW. In this case I concur with a majority of the Court in believing that the judgment ought to be arrested, on the ground that the offence is not sufficiently and legally charged in the indictment so as to bring it within the true meaning of the statute.

But I go further, and insist that the facts if they had been sufficiently and legally charged, do not constitute an indictable offence within this State.

I understand it to be conceded that from the provisions of the Constitution of the United States, from the nature of the State governments, and the spirit of our free institutions, a crime committed in another State cannot be tried and punished in our Courts.

This much being conceded, it is material to inquire whether the act of coming into this State with the stolen goods, can subject the party here to an indictment for larceny.

The language of the act of 1807 is, "that any person who shall steal or feloniously take any horse or other goods and chattels from any person out of the territory, and shall afterwards have the same in his possession within the territory, may be indicted for horse stealing or other larceny, &c."

To me it appears that this act substantially provides for the trial and punishment of an offence committed in the State of Georgia, or any other State. The felony was complete in the State of Georgia, and the fact of the felon's bringing the stolen property into this State cannot

alter the character of the crime committed in Georgia, nor change it into larceny here. The prisoner is amenable to the laws of Georgia; he may be demanded by the Executive authority of that State, and be sent there for trial and punishment. Nor could the conviction here be any bar to the trial there. It hence follows, that according to the judgment now pronounced by a majority of this Court, he may be twice tried and punished for the same crime. This would be against natural justice and contrary to the spirit of our criminal jurisprudence, and cannot be law.

When the liberty and reputation of a freeman is in jeopardy, I think the distinction too refined to say we punish not for the larceny committed in Georgia, but for being found in possession of the stolen property here. The statute professes to provide for the indictment and punishment of larceny. The act of bringing the stolen property into the State cannot of itself constitute larceny, nor can the party be convicted, even under the statute, without proof of the commission of the crime in Georgia.

To view the subject in any light, the conclusion inevitably follows, that a man is tried and punished for a crime committed in another State, and that he may be twice tried and punished for the same offence.

Though the Court will always lean in favor of the constitutionality of an act of the Legislature, yet where the validity of an old law enacted before the adoption of the constitution is questionable, it is a settled doctrine that such question in criminal cases should be construed and extended to the benefit of the party accused. I am of opinion that the section of the act under which the indictment was had, is not law, and that the conviction is illegal.

I am further of opinion, that in remanding the case for a new trial, the Court is departing at least from the principle adopted in the case of the *State v. Plunket.* Plunket was indicted and convicted of stealing a horse of a certain description; it came out in evidence that the prisoner had stolen a gelding and not a horse, for this the judgment was arrested in this Court and the prisoner discharged.

JUDGES LIPSCOMB and SAFFOLD dissented from the opinion of the majority of the Court, believing the conviction to be legal.

Judgment arrested, and prisoner to remain in custody to answer a new indictment.