## THE STATE v. ADAMS.

1. Two slaves having been stolen, or inveigled, in the State of Florida, and found in this State in the possession of the prisoner, who proved that he had obtained them from one Smith, by a sale, or what purported to be a

sale, from Smith to him: Held, that he could not be convicted on an indictment for stealing the slaves, without proof that they were stolen by him in Florida, and were brought by him into this State.

Error to the Circuit Court of Barbour. Before the Hon. J. D. Phelan.

COCHRAN & SAYRE, for plaintiff in error.

The first charge refused was in these words: That upon the state of facts specified in the bill of exceptions, the defendant could not be convicted under the indictment.

The indictment is founded on the statute of 1843, Clay's Dig. 419, § 18.

But that statute can only be applicable to this State, as it makes that larceny in this State, which was not larceny at common law.

The common law is presumed to exist in all the other States of the Union, and no act of our State legislature can make that a larceny out of this State, which was not a larceny independent of the act.

To steal a negro in another State, and bring him into this, is an offence created by our statute alone, and it has no other source from which to derive its existence. That statute will be found in Clay's Dig. 420, § 25.

Now it is plain, that if the statute first referred to contained only the words "fraudulently or feloniously steal," no conviction for the larceny of a slave could be had under it, unless the common law offence was fully made out. Indeed, the reason why our statute upon negro stealing was enacted, was. owing to the difficulty of making out the common law of-. fence. The word "steal" must have the common law meaning, and our legislature must have had that in view when the statute was passed.

At the common law, the evidence detailed in the bill of exceptions does not make out a larceny; then it was no larceny in the State of Florida; and the fact that the property was brought to this State, cannot make it a larceny in Florida; but if it was no larceny in Florida, it cannot be punished in this State.

That a larceny was committed in Florida, is the first fact that must be established, and that is not done: the case is at an end.

The State v. Mooney, 8 Ala. 332, shows that the proof should make out the common law offence. Hence it follows that the second and third charges should also have been given. State v. Mooney, *supra*,

The court erred also in refusing the fourth and sixth charges. The common law does not recognize property in negroes, but it depends upon the statutes of each State. The only way of proving the laws of a State, is by their production.

The court, then, cannot judicially know that slaves are property in any other State than this; for in some of the States it has no existence at all; in others it is permitted for a limited time only; and in others it is recognized absolutely, without limit. In some of the States it is regarded as personal property; in others it has been regarded as real estate, and descended to the eldest son. Now, real estate is not the subject of larceny at common law; and in those States where negroes are considered as real estate, they cannot be the subject of larceny, except by special enactment.

We think the fifth charge should have been given, it would be strange if an offence which was not a felony at the place where it was committed, could become one, by the offender's going to another State.

ATTORNEY GENERAL, for the State.

1. In the case of the State v. Mooney, the court say that it was the intention of the legislature to create an offence distinct from larceny at the common law, and that it was intended to prevent the influence exerted on the mind of a slave to make him quit his master's service, when they adopted the penal code, ch. 4, § 18, whether the inveigler be present or not. 8 Ala. Rep. 328.

2. Whether or not slavery exists in Florida, or negroes are property in that State, is a matter so recognized by the laws of the United States, or by Congress, that the courts must judicially take notice of them, and therefore need not be proved.

3. In the State of Mississippi, a negro is presumed to be *prima facie* a slave. Randall v. The State, 4 S. & Marsh. 349; 1 Dev. Rep. N. C. 376; 2 Bibb, 238; 2 Halst. 253.

There was no error in refusing the fifth and sixth charges asked—these depend upon the fourth. If slavery exists in Florida, or if negroes are property there, then they come under the term goods and chattels, and a larceny of them punished by common law, and the courts are bound judicially to know that the common law is in force in Florida. Nabors v. The State, 6 Ala. Rep. 200.

4. On the fourth charge asked and refused, I refer the court to authorities to establish this point, to wit: courts are bound judicially to know all those laws which concern the external relations of a foreign country. Slavery, so far as the State of Florida is concerned, is an external matter, and not confined to internal concerns. That the courts are bound to know, that three-fifths of the slave population in Florida are represented in Congress. 1 Greenleaf's Ev. 6; 1 Cranch, 38.

CHILTON, J.—The prisoner was indicted in Henry county, for that he feloniously did inveigle, steal, entice and carry away with intent to appropriate to his own use, two certain slaves, the property of one Alston. The venue was changed to Barbour county, where the prisoner was tried and convicted.

Upon the trial, a bill of exceptions was sealed by the presiding judge, by which it appears, that the slaves mentioned in the indictment were stolen in Florida, where it was shown Alston, their owner, resided. It was further shown, that there existed in adjacent parts of Florida and Alabama, a set of men who had confederated to steal and run negroes from Florida to Alabama, and that the defendant was one of those concerned. That the slaves were inveigled or stolen from Florida in pursuance of such scheme, either by the prisoner, or one or more of his confederates. The slaves secretly left their owner in Florida in April, 1846, were next found in possession of one Smith, in Henry county, which was in June of the same year, and the proof showed the prisoner

obtained them from Smith by a sale from Smith to him, or what purported to be a sale. This was all the proof as to the possession, or as the bill of exceptions terms it, "the whereabouts" of the slaves, since they left their owner in Florida. Upon this proof, the counsel for the prisoner asked the court to charge the jury, that the defendant could not be convicted under the indictment.

The charge asked for the prisoner demands of the court the judgment of law upon the facts proven in the cause, and about which there is no controversy.

The statute declares, "every person who shall fraudulently, or feloniously, steal the property of another in any other State or country, *and shall bring the same within this State*, may be convicted and punished in the same manner as if such larceny had been committed in this State; and in every such case, such larceny may be charged to have been committed in any county in, or through which such stolen property may have been brought." Clay's Dig. 420, § 25. To warrant a conviction under this statute, it is too clear to admit of any doubt, that the prisoner must not only have stolen the slaves in another country, but that he brought the slaves to this State; for, if he stole the slaves in Florida, and did not bring them into this State, he is amenable alone to the jurisdiction of the courts of Florida, whose criminal laws he has violated. The gist of the offence, is the bringing of stolen property into this State by the thief, who may thus defraud our citizens by a sale of such property, which can be reclaimed by the true owner. See the State v. Seay, 3 Stew. Rep. 129. Our statute does not propose to punish the party for the larceny committed in violation of the laws of a foreign jurisdiction. It is clear the punishment here inflicted could not deprive the State of Florida, whose laws have been violated, from trying and convicting the offender in that State, and thus the accused would be twice tried, convicted and punished for the same offence. But the fifth article of the amendments to the constitution of the United States declares, "nor shall any person be subject for the same offence, to be twice put in jeopardy of life or limb." So that we conclude, our statute was not designed to punish for the larceny

The State v. Adams.

committed against the dignity of Florida.　State v. Brown, 1 Hayw. Rep. 100; People v. Schenck, 2 Johns. Rep. 477.

It necessarily results from what we have said, that as there was no proof that the slaves named in the indictment were brought from Florida into this State by the prisoner, the facts shown by the proof did not sustain the indictment, and the court should have given the first charge asked.　That the prisoner purchased the slaves from Smith in Henry county in this State, is a circumstance tending to show that his possession in this State was not felonious; for the possession of Smith, unexplained by proof, we must intend, was *bona fide*, and his transfer to the prisoner could not place the latter in a worse condition than he was before.　There being no proof connecting Smith's possession with the prisoner or his associates in crime, the presumption is created that Smith honestly brought the slaves from the State of Florida, and until this presumption was rebutted, the prisoner was entitled to his acquittal, although he may have stolen the slaves in Florida, with the intention of bringing them to this State. As this point is decisive of the case in this court, it is unnecessary for us to examine critically the other charges which were refused.　We would however remark, that the court is bound judicially to know that slavery exists in the State of Florida.　This law, recognized as it is by the constitution, the ordinance, the treaty, as well as various laws of the United States, and the history of the confederacy, certainly required no proof.

Let the judgment be reversed, and the cause remanded.