UNITED STATES v. POTTER.    SAME v. DANA.    SAME v. FRENCH.

(Circuit Court, D. Massachusetts. October 29, 1892.)

Nos. 1,211, 1,212, 1,213, 1,214.

1. NATIONAL BANKS—OFFICERS—INDICTMENT—CERTIFICATION OF CHECKS.
   An indictment under the act of July 12, 1882, c. 290, § 13, amendatory of Rev. St. § 5208, which makes it a misdemeanor for "any officer, clerk, or agent of any national banking association" to "certify any check" drawn by a person who did not then have on deposit sufficient money to meet the same, need not allege delivery of the check by the bank after the certification.

2. SAME—INDICTMENT.
   The act of 1882 prohibits the certification of checks "before the amount thereof shall have been regularly entered to the credit of the drawer on the books of the banking association;" and section 5208 prohibits the certification unless the drawer "has on deposit with the association, at the time such check is certified, an amount of money equal to the amount of such check." Some counts of the indictment simply charged that the checks were certified contrary to this prohibition, and others that after certification they were authenticated by the paying teller. *Held* that, inasmuch as the counts allege the certification as an accomplished act, it will not be presumed that the authentication was any essential part of it; and hence it is not necessary to allege the absence of the required credit or deposit at the time the authentication was made.

3. SAME—LANGUAGE OF STATUTE.
   The indictment, in charging in the language of section 5208, that the drawer of the check had not on deposit, at the time it was certified, "an amount of money equal to that specified" in the check is sufficient.

4. SAME—DUPLICITY.
   The indictment does not charge two offenses in the same count because it alleges therein that the check was certified "before the amount thereof had been entered to the credit of the drawer on the books of the

bank," and also at a time when the drawer did not "have on deposit an amount of money equal to" the amount of the check.

5. SAME—ACCOMPLICE.

An indictment against the president for "aiding and abetting" the cashier in certifying checks under the prohibited circumstances cannot be sustained, for the statutes are of narrow range, and are directed only against the person who committed the act directly, or perhaps by so intimidating or overpowering another that the latter became the mere physical instrument of the former.

6. SAME—DIRECTORS' FALSE REPORT—INDICTMENT.

Rev. St. § 5209, provides that "every officer or director * * * of any national banking association who * * * makes any false entry in any book, report, or statement of the association with intent * * * to deceive any officer of the association or any agent appointed to examine the affairs of such association, and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor." *Held,* that an indictment charging the directors with making false entries in a report to the comptroller of the currency on the condition of the bank cannot be sustained under this section, for under section 5211 their sole duty in regard to such reports is to attest them by their signatures; and any entries therein by them would be mere spoliation and not "false," within the meaning of the section.

7. SAME—UNCERTAINTY.

The use in an indictment under this section of the words "then and there" in alleging that the defendant was president or director of such bank, and that he made alleged false entries, is not uncertain or repugnant merely because in one place they may refer to the whole of a day and in another to only one instant of the day.

8. SAME—IMMATERIAL OMISSION—MISNOMER.

The omission of the signs for dollars and cents in the recitals of the alleged false entries in the reports, and misnomer of the reports are immaterial, where the reports are set out by their tenor in the indictment, so that these discrepancies are at the most mere "matter of form," within the meaning of Rev. St. § 1025, for which the indictment is not to "be deemed insufficient."

9. SAME.

It is not necessary to allege specifically in such indictment that the reports were transmitted to the comptroller of the currency, or that they were published.

10. SAME—INTENT.

Allegations that the false entries were made with intent "to injure and defraud the said association and certain persons to the grand jurors unknown" are sufficient. U. S. v. Britton, 2 Sup. Ct. Rep. 512, 107 U. S. 655, followed.

At Law. Indictments against Asa P. Potter, president, and Thomas Dana and Jonas H. French, directors, of the Maverick National Bank of Boston, for violating the national banking laws. Heard on demurrers to the indictments. Demurrers sustained as to defendants Dana and French, and in part sustained and in part overruled as to defendant Potter.

Indictment No. 1,211 was against Asa P. Potter. Eighty-eight counts charged him with certifying and causing to be certified 11 different checks, and were founded on the following statutes:

Act of July 12, 1882, c. 290, § 13: "That any officer, clerk, or agent of any national banking association who shall willfully violate the provision of an act entitled 'An act in reference to certifying check by national banks,' approved March third, eighteen hundred and sixty-nine, being section fifty-two hundred and eight of the Revised Statutes of the United States, or who shall resort to any device, or receive any fictitious obligation, direct or collateral, in order to evade the provisions thereof, or who shall certify checks before

the amount thereof shall have been regularly entered to the credit of the dealer upon the books of the banking association, shall be deemed guilty of a misdemeanor," etc.

Rev. St. U. S. § 5208, referred to above, is: "It shall be unlawful for any officer, clerk, or agent of any national banking association to certify any check drawn upon the association, unless the person or company drawing the check has on deposit with the association, at the time such check is certified, an amount of money equal to the amount specified in such check."

Forty of the counts charged that Potter did as president "unlawfully, knowingly, and willfully certify a certain check, which check was then and there drawn upon said association [the Maverick National Bank] for the amount of twenty-four hundred and fifty dollars, by certain persons, to wit, Irving A. Evans, Austin B. Tobey, and William Bliss, then and there doing business as copartners under the firm name and style of Irving A. Evans and Company, and which said check was then and there of the tenor following, that is to say. [A copy of the check as certified was then set out] That the said persons as copartners under the firm name and style as aforesaid, by whom said check was then and there drawn as aforesaid, did not then and there, to wit, at the time said check was so certified by said Potter as aforesaid, have on deposit with said association an amount of money then and there equal to the amount then and there specified in said check, to wit, the amount of twenty-four hundred and fifty dollars in money, as he, the said Potter, then and there well knew," etc.

Forty-four of the counts against Potter charged that one Joseph W. Work, the cashier of the Maverick National Bank, did unlawfully, knowingly, and willfully certify a certain check drawn by Evans & Co., (setting it out,) the said Evans & Co. not having on deposit with the bank an amount then and there equal to the amount then and there specified in said check, as he, the said Work, then and there well knew; and that "Asa P. Potter, the president of said association, before the said Work so unlawfully, knowingly, and willfully certified said check, * * * did unlawfully, knowingly, and willfully counsel, aid, abet, procure, and command the said Work, (he, the said Work, being then and there cashier of said association,) to unlawfully, knowingly, and willfully certify said check," etc.

It will be seen that a portion of the counts were under section 5208, and charged the willful certification of checks when the parties drawing the check did not have on deposit "an amount of money then and there equal to the amount of money then and there specified in said check," and others charged, under section 13, the willful certification of checks before the amount thereof had been entered to the credit of the party drawing the check on the books of the bank; and that the above two classes were each subdivided, a part charging Potter as principal, and a part as counseling and aiding J. W. Work, the cashier. Some of the counts contained a further statement that the checks, after being certified, were authenticated by Jordan, the paying teller, by placing his initials, "N. J. C.," before the words "Paying Teller" on the back of the note, and following the certification. Nothing was said about delivering the check after certifying.

A special demurrer was filed, in which and under which the following points were raised: (1) That the counts between and including 1 to 4 and 65 to 80 did not set out that the check was delivered after being certified. (2) That the counts charging aiding and abetting state no cause of action. (3) That the authentication by the paying teller was a part of the certification; that the indictment sets out simply that there was no money on deposit when Potter certified the check, and does not set out that there was no money on deposit when the authentication was made, which would have been sufficient. (4) That the words "amount of money equal to" are indefinite, and under them one might be convicted who had on deposit a greater sum than the amount of the check. (5) That certifying checks before sufficient money is on deposit is an offense, and certifying checks before the amount is entered upon the books of the bank is another, and that some counts set out circumstances covering both offenses, and were bad for duplicity.

Indictment 1,212 was brought under Rev. St. § 5209, which is as follows: Section 5209: "Every president, director, cashier, teller, clerk, or agent of

any (national banking) association who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of the association, indicates the omission of some, or who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association, and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

This indictment was in 30 counts. In 18 counts it was charged that said Potter, as president, "in a certain book then and there belonging to, and then and there in use by, said association in transacting its said banking business, and then and there called and known as the 'Note Teller's Cash Book,' which said book contains entries concerning said business covering a period of time beginning with the 30th day of December in the year of our Lord one thousand eight hundred and eighty-nine, and ending with the 24th day of June in the year of our Lord one thousand eight hundred and ninety, and upon the right-hand page of a certain folio of said book, which said page, at the top thereof, was then and there on said fourth day of March marked and designated in the words and figures following,—that is to say:

—did unlawfully, knowingly, and willfully make on said page, and to the right of, and on the line next below, the word 'Legals,' on said page, a certain false entry, which said false entry was then and there on said fourth day of March of the tenor following,—that is to say, '312,100;' which said false entry so as aforesaid made in said book then and there on said fourth day of March purported to show, and did in substance and effect indicate and declare, and was then and there on said fourth day of March intended by said Potter to falsely indicate and declare, that there was then and there at the same time false entry was so made as aforesaid in the possession of said association, in the department of the note teller thereof, as the property of said association, the sum of three hundred and twelve thousand one hundred dollars in legal tender notes of the United States, and the jurors aforesaid, upon their oath aforesaid, do say that the said false entry so made as aforesaid was then, at the time said false entry was so as aforesaid made, false in this: that there was not then and there, at the time said false entry was so made as aforesaid, in the possession of said association, in the department of said note teller thereof, as the property of said association, the said sum of three hundred and twelve thousand one hundred dollars in legal tender notes as aforesaid, all of which he, the said Potter, then and there well knew; and said false entry was at the time it was so made as aforesaid false in this: that the sum of all the legal tender notes of the United States in the possession of said association in the department of the said note teller as the property of said association did not, at the time said false entry was so made as aforesaid, exceed the sum of twenty-six thousand dollars, as he, the said Potter, at the time said false entry was so made as aforesaid, well knew; and that the said false entry so made as aforesaid was then and there made as aforesaid with the intent then and there on the part of him, said Potter, at the time he so made said false entry, to deceive any agent who might be thereafter appointed by the comptroller of the currency of the said United States to examine the affairs of said association, against the peace," etc.

Twelve counts of the same indictment charged alternatively that said Potter, as such president and director, did "unlawfully, knowingly, and willfully make a certain false entry in a certain report of the said association, which said report was then and there on said sixth day of March a report of

the condition of said association at the close of business on the twenty-eighth day of February in the year of our Lord 1890, made to the comptroller of the currency of the said United States, as required by law to be made," etc.

A part of the counts charged that Potter, as president, made false entries in the reports, and a part charged him, as director, with making the false entries.

A copy of the report was attached to each count, and by this it appeared that the report was made and sworn to by J. W. Work, cashier, and that after the words, "Correct. Attest," were the signatures of Potter, French, and Dana, followed by the word "Directors." In some cases the name of Henry F. Woods appeared instead of that of Dana, and in some of the counts the dates were different from those in others.

The reports were those called for by Rev. St. § 5211, which required that the report be verified by the oath or affirmation of the president or cashier of such association, and attested by the signature of at least three of the directors.

A special demurrer to the first 18 counts was filed, and another to the remaining counts. The first demurrer raised the following points: (1) That the odd-numbered counts charge the defendant only with intent to deceive any agent who might thereafter be appointed by the comptroller of the currency of the United States to examine the affairs of the association, and do not charge any intent to injure or defraud the association or other person. (2) That the even-numbered counts do allege the means by which defendant intended to defraud the bank, which, in a charge of false entries in books, must be by deceiving officers of the bank or agents appointed to examine the bank. In these counts an intent to deceive such agent only is alleged. (3) That in the even counts, from the nature of the case set forth, there could be no intent to injure and defraud said association or persons unknown. (4) In that the entries complained of are not set out with sufficient precision and certainty, and the context is not sufficiently set forth. (5) In that there is no allegation that the gold legals and gold certificates set out in the respective counts were not in the possession of the bank at the time the alleged entries were made. (6) In that in the odd-numbered counts there is no allegation that an examiner ever was appointed or came into existence whom it was possible to deceive by the entries complained of. (7) The eighteenth count is defective in leaving out the word "banking" in the description of the association described therein. (8) In that the making of the entries complained of in these 18 counts constituted no part of the official duty of the president of the bank, and, if made by him, were simply voluntary acts upon his part, for which he is not criminally liable. (9) That in the even-numbered counts, where the intent alleged is to deceive any agent who might thereafter be appointed to examine the affairs of said association, the name of the agent whom it was intended to deceive should be set out in full, or, if the name was unknown, that fact should be stated in the indictment. (10) That the even-numbered counts do not set forth any act done with any intent prohibited by the statutes of the United States.

A separate special demurrer to the remaining counts alleging false entries in reports raised the following, among many, points: (1) The words "then and there," as used in various places, are inconsistent, uncertain, and repugnant, in some cases referring to the whole of a particular day, and in others to a part of the same day; as in "there and then, on said sixth day of March." (2) There is no allegation that the report was transmitted to the comptroller, or that it was published. (3) There is no allegation that the bank was established prior to the making of the report of its condition. (4) A false entry in a report to the comptroller cannot be made with the intent to deceive the bank examiner, and no offense is therefore set out. (5) The name of the agent alleged to have been deceived should have been set forth. (6) In the indictment the bank is named the "Maverick National Bank of Boston," but the caption of the report is the "Maverick National Bank." (7) There is no proper description of the report, so that the allegations leave an uncertainty whether it is of the first or second class of reports called for by Rev. St. § 5211. (8) The directors are not required by law to make reports. (9)

There is no sufficient allegation that the reports were verified by the president or cashier, or that they were attested by three directors.

The term of the report was set out in the body of the indictment, and the end of the report were the oath of verification, signed "J. W. Work, Cashier," and the following:

"Correct. Attest: Asa P. Potter,
                "Thos. Dana,        } Directors."
                "Jonas H. French.

At the argument it appeared that the false entries of which this is a sample read: "8. Due from other national banks, 1,069,636.45." The entry as shown in the report was: "8. Due from other national banks, 1,069,636, 45," with "dollars" and "cents" written above the figures 1,069,636 and 45, respectively. Another alleged false entry, "Gold Treasury Certificate, $532,000.00," taken from the following group:

"Specie viz:   { Gold Coin........................
                 Gold Treasury Certificate, $532,000.00.
                 Gold Clearing House................

—omitted the words "specie viz."

Indictment 1,213, against Thomas Dana, and 1,214, against Jonas French, were both brought under Rev. St. U. S. § 5209, and charged the making of false entries in the report to the comptroller of the currency of the condition of the bank of which they were directors.

A special demurrer was filed, in which the principal contention was that the statute intended to punish the officers for doing wrongly what it was their duty to do rightly; that section 5211 required the directors to only attest the report, i. e. witness the verification, and that it was not their duty to make or verify the report; that making a false entry in a report was not a breach of their duty as officers; that, if they were liable at all, it must be under the aid and abet clause in section 5209, and not as principals.

Frank D. Allen, U. S. Dist. Atty., for complainant.

W. S. B. Hopkins and Henry D. Hyde, for defendant Potter.

H. W. Chaplin and W. F. Dana, for defendant Dana.

George M. Stearns, W. H. Coolidge, and A. A. Strout, for defendant French.

PUTNAM, Circuit Judge. The sixth amendment to the constitution provides that in all criminal prosecutions the accused shall enjoy the right to be informed of the nature and cause of the accusation. This is a reaffirmation of the essential principles of the common law, but puts it beyond the power of either congress or the courts to abrogate them. It follows, as a matter of course, that the effect of this provision commences with the statutes fixing or declaring offenses, and, as to them, insures the general rule of the common law that they are not to be construed to embrace offenses which are not within their intention and terms. This does not mean that all the elements of a crime must be set out in the statute on which the prosecutor relies, nor that the statute may not create an offense by the use of inapt or imperfect phraseology, (U. S. v. Carll, 105 U. S. 611;) but they must be in some way declared by the legislative power, and cannot be constructed by the courts from any supposed intention of the legislature which the statute fails to state.

The general rule is applied to an indictment more strictly. It is not sufficient that the pleader state merely the facts from which an offense can be implied, or only so many of the essential elements as in the ordinary experiences of life, or even in a statute,

might suggest all the other elements; but he must state in terms everything necessary to constitute a criminal act. For example, as is well known, there are no common-law offenses against the federal authority; so that theft on shipboard on the open seas would not be punishable without a statute providing for it. It would be sufficient that such a statute set out in terms that larceny on shipboard on the high seas should be punishable, with a certain penalty named; but every legal mind would at once admit that, although this would be sufficient in the statute, an indictment which alleged merely that the person accused committed larceny on board a certain ship, naming it, on the high seas, embracing the entire phraseology of the statute, but without details of the property stolen and of its ownership, and the other usual details, would be wholly insufficient.

So, also, there are certain offenses, especially those arising under the revenue laws, which are punishable independently of the intent; but generally there can be no crime unless there is a criminal purpose. Congress, however, in declaring offenses, does not always note this distinction in the terms of the statute. It sometimes prohibits the act and declares the penalty in quite the same terms, whether as a part of the revenue laws, where the intent is not always important, or as part of the general criminal code, where it is essential; but in the latter case the courts understand that the guilty purpose is an element which must be set out in the indictment, although not necessarily in the statute. U. S. v. Carll, ubi supra.

Sometimes a statute, either through embracing a great many offenses of the same class, or for some other reason, is so general in its terms that the indictment must allege many particulars which the statute omits. U. S. v. Cruikshank, 92 U. S. 542, 557.

These are a few illustrations out of many which might be made. They are sufficient to establish the proposition that, while it is ordinarily enough that the indictment declares an offense in the language of the statute, as has many times been said by all the courts, this is not universally true, and does not excuse the prosecutor from setting out every essential element constituting the crime.

In order to properly inform the accused of the "nature and cause of the accusation," within the meaning of the constitution and of the rules of the common law, a little thought will make it plain, not only to the legal, but to all other educated, minds, that not only must all the elements of the offense be stated in the indictment, but that also they must be stated with clearness and certainty, and with a sufficient degree of particularity to identify the transaction to which the indictment relates as to place, persons, things, and other details. The accused must receive sufficient information to enable him to reasonably understand, not only the nature of the offense, but the particular act or acts touching which he must be prepared with his proof; and when his liberty, and perhaps his life, are at stake, he is not to be left so scantily informed as to cause him to rest his defense upon the hypothesis that he is charged with a certain act or series of acts, with the hazard of

being surprised by proofs on the part of the prosecution of an entirely different act or series of acts, at least so far as such surprise can be avoided by reasonable particularity and fullness of description of the alleged offense. These rules are well expressed in U. S. v. Cruikshank, 92 U. S. 542, 557, as follows:

"In criminal cases prosecuted under the laws of the United States the accused has the constitutional right 'to be informed of the nature and cause of the accusation.' Amendment 6. In U. S. v. Mills, 7 Pet. 142, this was construed to mean that the indictment must set forth the offense 'with clearness and all necessary certainty to apprise the accused of the crime which he stands charged;' and in U. S. v. Cooke, 17 Wall. 174, that 'every ingredient of which the offense is composed must be accurately and clearly alleged.' It is an elementary principle of criminal pleading that where the definition of an offense, whether it be at common law or by statute, 'including generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species,—it must descend to particulars. 1 Arch. Cr. Pr. & Pl. 291. The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances."

Other and later cases might be cited to the same effect.

In addition to these fundamental principles, the force of which all admit, there have been certain precedents, including precise forms of expression, some of them highly technical, in use for so long a period, not only with reference to offenses long familiar to the law, but also with reference to new offenses to which they can be applied, that they have come to have more or less the force of law. Some of them are undoubtedly the relics of what was once essential, but now unessential. Others, perhaps, were the mere fashion of the times, repeated so often that they are now in the mouth of every pleader. Some of them, to the well-trained legal mind, seem to be wholly unessential, the omission of which ought not prejudice any; yet, in view of the fact that ours is a government of laws, and not of men, and of the further fact that, when the judiciary and the courts pull away from well-known landmarks, they are apt to enter a field where their only guides are the varying individual and sometimes crude opinions of different judges, or mere judicial discretion, liable to run into a kind of oppression and injustice most detestable, because most insidious, the courts ordinarily adhere to these forms, precedents, and expressions until common consent is united against them, or the legislature has expressly interfered.

Rev. St. § 1025, provides that no indictment shall be deemed insufficient "by reason of any defect or imperfection in matter of form which shall not tend to the prejudice of the defendant." But the statute does not aid much, because the question still remains, what are "matters of form?" The decisions touching it have been meager.

With reference to all the principles I have stated, there seems to be no distinction concerning either the rules applicable to the construction of the statutes, or the requisites of indictments, on account of the severity of the punishment inflicted, except in behalf of capital offenses, or those involving the liability of imprisonment for life, and possibly in behalf of felonies at common law. The discussions at the bar urging the contrary were interesting, and presented some lines of reasoning not easily answered; but they are all met, at least so far as these cases and this court are concerned, by the rulings in U. S. v. Britton, 108 U. S. 192, 2 Sup. Ct. Rep. 525, which apply to those particular statutes—to one in terms, and to the other, which is in pari materia, by necessary implication—the ordinary permission to plead in the language of the statute. The principles stated cover all which this court regards necessary to meet the questions raised by the indictments which will now be disposed of.

The statute on which the indictment is based in No. 1,211, (U. S. v. Asa P. Potter,) charging the illegal certification of checks, is a very apt one for the application of the ordinary rule that it is sufficient to allege an offense in the terms used by the legislature. The word "certify" is of modern use, and is not a technical term known to the law. It goes into the statute as popularly understood, and, being thus adopted by the law, it thus receives an authorized legal definition and interpretation, and therefore is as good for the indictment as for the statute. The proposition is entirely different from that arising when the statute is very general, or clearly omits an element in a criminal offense; because, as in this case there is no settled legal or technical interpretation of the word to controvene any use of it which the statute may adopt, nothing is omitted. Daniel, Neg. Inst. (4th Ed.) § 1603, says as follows: "Let us consider more at length the effect of the certification of checks. In the first place, the bank becomes at once the principal debtor." It is therefore plain that, as Daniel uses the word "certification," it covers everything needed to bind the bank, and also that this includes, among other things, a redelivery by the bank of the possession of the check, if the law supposes such redelivery a necessary element.

Moreover, there is nothing in this indictment, nor is there anything in the nature of the transaction of certifying a check, which raises any presumption of law that the check passes into the possession of the bank certifying it; and there is no occasion for an allegation of a redelivery, when neither the indictment alleges delivery nor the law implies it. If it should appear in defense that the checks did actually pass into the possession of the bank, a different question might arise, and probably it would be a sufficient answer to the indictment that they were not redelivered; but this need not be anticipated by the indictment, as indictments are not held to the strict rules applicable to pleas in abatement, nor required to be certain to every intent. For this same reason, Freund v. Bank, 76 N. Y. 355, does not aid the court. In that case the primary question was between different claimants of the check, and

the bank would have been liable in some form of action if it had withheld it even without certifying.

The fact relied on by the accused, that the indictment specifically alleges that the certification was by writing on the check, is harmonious with the views that I have expressed, because, as the act of certifying does not in law imply that the check went into the possession of the bank, this specific allegation, even if it operates to limit the scope of the indictment to the fact of making the writing described, yet meets all the requirements of the statute. While the holder of a check or bill of exchange, who presents it for acceptance, cannot, by retaining it manu suo, do so in such manner as to prevent its inspection, he is not required by any rule of law to entirely part with its control or manual holding.

Touching the matter of authentication by the paying teller, it may appear at the trial that the certification was not complete without that authentication, and in that event the result may be that the United States will fail to prove its case, or the defense will show a variance. This, however, is not the stage of the case when such matters are in issue. The counts expressly allege the certification to have been accomplished, and, as they do not set out the purpose of the authentication, it cannot be presumed to be any part of the certification. The word "authenticate," like the word "attest," has not a sufficiently definite signification to control the positive allegations contained in these counts.

The words in the indictment, "amount of money equal," and so forth, are the words of the statute. They constitute an awkward expression, but are not indefinite nor general, as claimed by the accused. They evidently mean in the statute the same as "as at least equal," or "so much money as." This is apparently one of the instances where the somewhat inapt, but not deficient, phraseology of the statute can be used by the pleader, under the general rule already referred to, without prejudice to the accused. No one can possibly misunderstand what is intended.

The counts denying that the amounts named in the checks have been "entered to the credit" of the drawers do not allege two offenses. They only set out a multiplicity of circumstances, of which the United States may properly prove the whole or only a part. They are akin to indictments alleging burning of dwelling houses in the nighttime, or thefts accompanied with breaking, of which the whole or part may be proven, even though, if only part is proven, the grade of the offense is essentially lowered. It is claimed that this portion of these counts does not follow the terms or intent of the statute; but, as the demurrers are to each count as a whole, and enough remains even if this portion is invalid, this question cannot be considered at this stage of the case.

I must therefore hold valid all the counts in this indictment which charge Asa P. Potter with personally certifying checks; but I must hold invalid all those which charge him as only aiding and abetting the cashier, Work, or, to put it more specifically, all which allege that the certification was done personally by the cashier.

The statute on which this indictment is based, though extremely beneficial, has a very narrow range, and must be interpreted accordingly. It does not reach overdrafts, nor acceptances of checks orally or by letter or telegraph. It was evidently aimed at only certain persons, and a special method of transacting business; and it must be construed upon the same strict rules which it has applied to itself. It shows no intention of punishing any except the officer of the bank whose hand committed the offense. I do not mean by this to exclude the common-law rule, "qui facit per alium facit per se," or to hold that, if either the president or cashier of a national bank unlawfully causes checks to be certified in his own name by his secretary or other amanuensis, or if the president so overpowers or intimidates the cashier that the latter in making the certification is the mere physical instrument of the former, the statute would not apply to the officer morally responsible. But these counts do not contain allegations going to this extent, for which more than the ordinary language in which aiding and abetting are charged—the words "counseled" and "commanded" not excepted— are required. So far as these counts are concerned, the cashier is the person subject to the penalty of the statute, if any one, and no other person can be charged under it.

I will add that I have not undertaken to examine this indictment except upon the points to which counsel have called my attention. It was quite impracticable for me to go into it at large; and, considering the experience of counsel, I have a right to assume that it was unnecessary. Therefore the court stands unprejudiced as to any other question which may be raised at any later stage.

While I have not yet been able to satisfy myself with the line of argument of counsel for Mr. Dana based on the supposed history of legislation, I must nevertheless hold that indictments Nos. 1,213 and 1,214 against Thomas Dana and Jonas H. French are not sustained by any statute. They are not based on the last clause of section 5209 of Revised Statutes, punishing aiding and abetting; but the accused are directly charged in their official character as directors with making false entries in reports to the comptroller.

Their specific duties as to such reports are covered by the words, "and attested by the signatures of at least three of the directors." By the statute these reports are required to be made "by the association," and to be "verified by the oath of the president or cashier." The provision for attestation by the directors was not in the banking act of 1864, but came in by the additional or amendatory act of March 3, 1869. No case has been cited, nor have I found one, where an indictment of this character has been sustained, unless it be U. S. v. Means, 42 Fed. Rep. 599. The report of this case covers only a charge to a jury, which, of course, never carries much weight as an authority. Moreover, the question involved here does not seem to have been discussed or specially considered. All the other cases have been against the cashier or president who verified the report. U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512, was a case of false entry in books by the president, an executive officer, and is not in any way analogous.

The indictments allege, in conformity with the statute, that the reports were made by the association. They do not charge that French or Dana made the reports, or had any authority to make them, or that they were made by order of the directors, including French and Dana. The reports are set out in the indictments by their tenor. Those which the court have examined appear in the usual form, signed by the cashier, and verified by his oath, and attested, as required by statute, by three directors, including in some cases French and in others Dana.

It would be an unnatural and strained construction of the statute to hold that the words "false entry" mean "forged" entry, "fictitious" entry, or any other entry made by any person not authorized to make the report, or, at least, who did not make it. The context of the statute shows that the word "false" is used in contradistinction to the word "correct," and that the statute in this particular relates only to those who have the right or authority to make correct and true entries or reports, or who assume such authority, and to none others. Presumably these reports are made by the cashier or president, who, as the executive officers, are authorized to verify them; and presumably any entry made in them by any other person would not be a false one within the meaning of the statute, but fictitious, forged, or otherwise unauthorized. I make, however, the qualification that if the indictments alleged that the directors, as a board or otherwise, including the accused, authorized a report false in whole or in part, the case might stand differently.

I do not wish it understood that this conclusion rests on any narrow ground. Giving the United States the full advantage of all that appears in the reports set out in the indictment, and assuming that French and Dana attested them, and that it was so alleged, yet, with all that, and with whatever force may be given to the word "attested," it would still be certain that this word does not go so far as to intend that in any legal sense they made the reports, or any entry in them. If French and Dana have, by their attestation, or otherwise, with criminal intent and knowledge, given currency to reports false in any particular, that portion of the Revised Statutes (section 5209) which punishes those who aid or abet is especially apt to reach them. The existence of that appropriate provision warns the court that it ought not to strain other portions of the statute, to meet what this is intended to plainly and aptly cover. The demurrers to the indictments against French and Dana must be sustained, and these defendants discharged.

(November 11, 1892.)

Coming to the indictment No. 1,212, against Asa P. Potter, those counts charging him with making false entries in reports, and alleging that he was a director, fall within the principles already stated by me with reference to the indictments against Jonas H. French and Thomas Dana. By well-known rules of pleading, they can draw no aid from those counts which allege that he was also president, and they must be held invalid.

The criticisms on the use of the words "then and there," and the allegations of time, in the counts charging false entries in reports, and alleging that the accused was president of the bank, seem to require a refinement and strictness not known to the law. In innumerable instances known to every practitioner of experience where there are set out many connected or related facts, though some may cover the whole of a day and others only an instant, or a small part of a day, the words "then and there" are used interchangeably, and without further specification, unless there is some presumption of law or necessity of pleading which does not exist in this case. The existence of the bank, and the tenure of office by the accused, are properly laid in terms to have the effect of a continuando, and stand by themselves. All the other facts might, in contemplation of law, have occurred simultaneously, or have taken only an instant in their occurrence, or have occupied the whole of a day, and there is no presumption which required that they should be described as occurring in consecutive order. Edwards v. Com., 19 Pick. 124, was a special case, and does not touch this general rule; and in U. S. v. Simmonds, 96 U. S. 360, there was an entire failure to allege any time.

On principle, allegations of time in criminal pleadings ought to be made with approximate accuracy; yet, by authority of a practice which has now continued so long that it must be yielded to, time need not be proved as stated, and these allegations touching it are the most useless portions of criminal pleadings. Of course, exceptions are to be noted where the allegations of time are inconsistent, or apparently bring the case within the bar of the statutes of limitations; and perhaps there are other exceptions. Yet, as a general rule, statements of time may be so far varied from by the proofs that Judge Lowell, in U. S. v. Jackson, 2 Fed. Rep. 502, and Bish. Crim. Proc. (3d Ed.) § 386, regard them as so wholly formal that they may be dispensed with under Rev. St. § 1025. U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512, holds, however, that there must be some allegation of time, as well as of place. But I am not now required to rule on the general proposition, and I refer to the statute only because it clearly renders unnecessary any more particularity than we find in the counts under consideration.

I am somewhat in doubt touching the omissions of the signs for dollars and cents, and of the word "specie," in the recitals of the alleged false entries in the reports; but, on the whole, I think that there is enough left to identify beyond doubt the entries on which the counts are intended to be based, and that the subsequent allegations supply the omissions, and that the omissions are, at the most, mere "matter of form," within the meaning of Rev. St. § 1025. The omission of the signs was not deemed important in U. S. v. Britton, 107 U. S. 655, 656, 2 Sup. Ct. Rep. 512. The same line of reasoning seems to meet the objection based on the apparent variance between the title of the bank as set out in the various counts, and as appearing in the caption of the reports.

If necessary, the alleged misdescriptions of the character of the reports are met in the same way, as the reports are set out by their

tenor, and also by their substance, and show for themselves what they are, and are fully described elsewhere in the body of each count. "Falsa demonstratio non nocet." Heard, Crim. Pl. 212, 213; Queen v. Williams, 2 Denison, Cr. Cas. 61. Moreover, the statute does not give these reports any designation of the character which the counsel for the accused assumes. They are all reports of the condition of the bank within the meaning of the law,—certainly all must admit that a detailed and tabulated statement of resources and liabilities is such; and, in the absence of any statute designation, they may well be so styled by the pleader.

In my opinion, it was not necessary to allege specifically that these reports were transmitted to the comptroller. That expression does not occur in the body of the enactment, but the word there used is "make," the present tense of the precise word used by the pleader. This necessarily includes the fact that the report reached the comptroller; and that the word "transmitted" is used subsequently in working out details does not make it an essential element in describing the offense. Neither is the omission to allege that the reports were published of importance, because the offense, if committed, was complete before the required time of publication.

It seems to the court that the words, "during all the times hereinafter mentioned," cover the 20th day of February. While, without Rev. St. § 1025, a more technical allegation might be required, yet with it this is sufficient

All the objections to the allegations of an intent to deceive or defraud, or other intent, are met, so far as this court is concerned, by the explicit approval by the supreme court in U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512, of two counts therein referred to. It is claimed by counsel that some of the propositions here presented and argued were not considered by the supreme court; nevertheless this court is holden to accept its express language relating to the particular counts before it, put in such form that it cannot be regarded as a mere dictum. If such rulings of the supreme court are to be reconsidered, it must be done by it, and not by a subordinate tribunal.

There remain, as to these particular counts, but two propositions to be considered,—one touching the fact that they do not set out that the reports were verified and attested, but on this point allege only that they were in the form required by law; and the other touching the claim that, while they allege that the accused was president, they do not allege that he acted in this matter as president, or in the line of his official duty. Of course, setting out an instrument by its tenor does not supply the want of an allegation of its execution.

Ordinarily it is not sufficient in criminal pleadings to allege merely that a matter or thing conforms to law, but the details must be set out, so that the court can apply the law, and determine for itself the validity or invalidity of the transaction or instrument. As to the other proposition. I have already laid down a rule in reference to the indictments against Jonas H. French and Thomas Dana, touching one who is presumably unauthorized, or who has no color

of authority. Can it be that those portions of Rev. St. § 5209, which punish the unauthorized issue of notes or certificates of deposit, and unauthorized assignments or acceptances, include mere forgeries, though made by one within some of the classes designated in the section? Is it not true, that, aside from the clause punishing those who aid and abet, the offense must include—First, that the offender is one of the enumerated classes; and, second, that he must have acted in the line of his authority, or at least under color thereof? In other words, aside from the clause punishing those who aid and abet, does not the suggestion of a breach of trust or agency run through the whole? U. S. v. Northway, 120 U. S. 327, 333, 7 Sup. Ct. Rep. 580. These are fundamental and difficult questions, which I am not willing to pass upon until they have been thoroughly and carefully reargued, in the light of the conclusions I have reached touching the indictments against Jonas H. French and Thomas Dana, and of the doubts herein expressed.

On completion of the reargument, I will dispose of the demurrer to all the counts in the indictment, and for the present, in No. 1,212, (United States v. Asa P. Potter,) I will only pass the following order:

Ordered, that the questions raised by the demurrers in this cause and left open by the opinion filed in No. 1,211, (United States v. Asa P. Potter,) be reargued.