301 So.2d 286

**Eugene BIRGE**

v.

**STATE.**

**4 Div. 291.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1974.

W. Perry Calhoun, Dothan, for appellant.

William J. Baxley, Atty. Gen., and Larry R. Newman, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Birge was convicted of perjury and sentenced to six years imprisonment in the penitentiary. He was represented in the trial court by a court-appointed attorney who represents him on appeal. At arraignment he pleaded not guilty. After conviction he sought and obtained a free transcript.

Previous to the perjury indictment, appellant had been convicted of assault with intent to murder. The year was 1966. He served some time in the penitentiary but was out on parole in 1973.

He was married to Gloria Birge and they had some children. While appellant was in the penitentiary, or while serving on parole, Gloria filed a suit for divorce. On August 30, 1973, appellant and his brother came to Gloria's home and knocked on the door and asked to be allowed to see the children. Gloria refused to let him in the house. At this time Gloria's brother came to the house and she let appellant in the house. Gloria went to the kitchen to wash dishes and instead of visiting with the children, appellant went to the kitchen and he and Gloria got into an argument about the pending divorce action. Appellant was trying to get her to drop the law suit and take him back and she refused to drop the suit or take him back. Appellant told Gloria that he had a lawyer and a gun to fight the divorce action and displayed a pistol. The pistol was seen by Gloria, her

brother and appellant's brother. Gloria told appellant if he did not leave the house, she would call the Police Department. Appellant's brother asked him to give the pistol to him and for both of them to leave the house. Appellant kept arguing with Gloria and she asked her brother to keep the children while she went next door to call the police. While she was gone, appellant gave his brother the pistol who then and there unloaded it and put the bullets in his pocket and carried the pistol to his truck and put it in the glove compartment. When Gloria returned home, both appellant and his brother were gone.

Subsequently appellant was indicted for owning or possessing a pistol after having been convicted of a crime of violence. Title 14, Section 174, Code of Alabama 1940.

After a trial for violating Section 174, supra, appellant was acquitted. During this trial, Gloria and her brother testified for the state and appellant was sworn and testified in his defense. The oath was administered by the Clerk of the Circuit Court of Houston County.

Both Gloria and her brother testified that appellant came to Gloria's house on August 30, 1973, ostensibly, to see his children but, in reality, his visit was to persuade his wife to terminate the divorce suit and for them to assume marital relations. When she refused and ordered him out of the house, he pulled a pistol and made the statement hereinabove mentioned. Appellant testified that he did not have a pistol on this occasion, and, moreover, he "had never had no gun" (sic).

Appellant's brother was subpoenaed as a witness in his behalf for the trial of the pistol possession case, but after conferring with appellant's lawyer that morning prior to trial, the lawyer told him he could not use him as a witness. The brother was released from the commandments of the subpoena and sent home.

It was on the basis of appellant's sworn testimony at this trial that he was indicted for perjury. At the perjury trial Gloria, her brother and appellant's brother all testified for the state. Gloria and her brother testified to the same state of facts as given by them in the pistol possession case. Appellant's brother testified that on the afternoon of August 30, 1973, that appellant had a .22 caliber pistol and wanted to borrow $10.00 on it. The brother gave him $10.00 and took the pistol and put it in the glove compartment of his truck. This occurred in Columbia in Houston County where appellant was employed. Later that afternoon he and appellant rode to Dothan and spent a couple of hours in the "Busybee" where the brother drank four or five beers; that appellant told him he wanted to go to Gloria's house and they left the "Busybee" with appellant driving the truck. When they arrived at Gloria's house, appellant got the pistol out of the glove compartment and both went into the house. According to the brother's testimony, appellant and Gloria got into an argument and appellant pulled the pistol out of his pocket, and Gloria ordered him to leave and went to call the police. The brother persuaded appellant to hand the pistol to him. After getting possession of the pistol the brother unloaded it and put the cartridges in his pocket and put the pistol back in the truck. He returned to the house and got appellant and they drove back to Columbia.

Two issues are pressed upon us for a reversal of this case, viz: (1) The refusal of the trial court to recuse or disqualify himself from presiding over the trial of this case, and (2) The action of the court in overruling the demurrer to the indictment. We will take these matters up in the order presented.

 Honorable Jerry M. White, one of the judges of the Circuit Court of Houston County, was the District Attorney at the time the Grand Jury indicted appellant for being in possession of a pistol after having been convicted of a crime of violence. Appellant was tried and acquitted for this offense on November 27, 1973. Judge

White was appointed Circuit Judge on November 21, 1973. Judge White did not, and could not have, presided at the time that case was tried. That prosecution had ended and even though appellant's sworn testimony was made the basis of the perjury indictment in the present case, the offenses were entirely different and for that reason alone, Judge White was not disqualified in this case. In reply to the motion to recuse, Judge White said:

"Of course, I was the Solicitor at the time the indictment was returned, where he was charged for unlawful possession of a pistol; but I was not the Solicitor or District Attorney at the time he was tried on that case, where the perjury was supposed to have occurred."

The oral motion for recusation in this case was not based on any of the statutory grounds (Title 13, Section 6, Code of Alabama 1940) nor was it made on any common law grounds of disqualification such as bias, prejudice, incompetency, partiality, etc., but was grounded on the simple fact that the trial judge was the District Attorney when the Grand Jury indicted appellant for possession of a pistol after having been convicted of a crime of violence. The District Attorney, now Circuit Judge, had no further interest in the case after drawing the indictment. The trial judge was not disqualified for any reason in presiding over the trial of this case. Kirby v. State, 78 Miss. 175, 28 So. 846.

An excellent annotation on this subject is found in 72 A.L.R.2d page 499.

Omitting the formal parts, the indictment reads as follows:

"THE GRAND JURY OF SAID COUNTY CHARGE THAT, BEFORE THE FINDING OF THIS INDICTMENT Eugene Birge, whose name is to the Grand Jury otherwise unknown, on his examination as a witness, duly sworn to testify by Marie McQuagge, Clerk of the Circuit Court of Houston County, Alabama, who had authority to administer such oath, on the trial of Eugene Birge in the Circuit Court of Houston County, Alabama, under an Indictment for possession of a pistol after having been convicted of a crime of violence, to-wit: Assault with Intent To Murder, falsely swore that he, the said Eugene Birge, did not have the pistol on August 30, 1973, in Gloria Birge's apartment, being Apartment No. 76, Henry Green Apartments, Dothan, Houston County, Alabama, and that on the occasion when he, the said Eugene Birge, and his brother went to Gloria Birge's apartment, being Apartment No. 76, Henry Green Apartments in Dothan, Houston County, Alabama, in the evening hours of August 30, 1973, that he did not have a pistol on said occasion, and that he, the said Eugene Birge, had never had no gun, the matter so sworn to being material and the testimony of the said Eugene Birge being willfully and corruptly false, against the peace and dignity of the State of Alabama."

Appellant's demurrer takes the point that the phrase in the indictment, to-wit: "had never had no gun" is so broad as to ante-date his conviction of a crime of violence when it would have been legal for him to possess a pistol and, therefore, this allegation is immaterial and illegal, and could not have been willfully and corruptly false.

Prior to the perjury trial, the District Attorney had the official court reporter transcribe appellant's testimony given at his trial for illegal possession of a pistol. The court reporter was sworn and testified from this transcript that appellant swore he did not have a pistol in his possession when he went to Gloria Birge's apartment on August 30, 1973, and further that he "never had no gun". Appellant did not object to the statement in which he denied having a pistol when he went to his wife's

apartment but did object to his statement that he "never had no gun". The objection was overruled.

■ This court said in Gayden v. State, 38 Ala.App. 39, 80 So.2d 495, that:

"The constitutional right of an accused to demand the nature and cause of his accusation is not a technical right, but is fundamental and essential to the guaranty that no person shall be deprived of his liberty except by due process of law, nor be twice put in jeopardy for the same offense.

"An indictment should be sufficiently specific in its averments in four prime aspects to afford this guaranty: (1) To identify the accusation or charge lest the accused should be tried for an offense different from that intended by the grand jury. (2) To enable the defendant to prepare for his defense. (3) That the judgment may inure to his subsequent protection and foreclose the possibility of being twice put in jeopardy for the same offense. (4) To enable the court, after conviction, to pronounce judgment on the record."

In affirming the Court of Appeals, 262 Ala. 468, 80 So.2d 501, the Supreme Court said:

"Indictments must always conform to the mandates of our organic law. The emphasis in our cases 'that in all criminal prosecutions, the accused has the right * * * to demand the nature and cause of the accusation' now § 6 of the Constitution of 1901—is not meaningless tautology, but one of the cornerstones of our Bill of Rights. * * *

\* \* \* \* \* \*

"We are further restrained in this case by the requirements of the Fourteenth Amendment to the Constitution of the United States. The following utterances by our Federal courts are pertinent: 'No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.' Cole v. State of Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644. 'The petitioner charged that he had been denied any real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process * * *.' Smith v. O'Grady, Warden, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859. 'An intelligent and full understanding by the accused of the charge against him is a first requirement of due process.' Bergen v. United States, 8 Cir., 145 F.2d 181, 187.

"Regardless of some ill-considered, loose expressions in some of the cases, the law is and always has been that it is not enough to charge against a defendant a mere legal conclusion as justly inferential from facts not set out in the indictment. United States v. Almeida, 24 Fed.Cas. pages 775, 776, No. 14,433.

'In order to properly inform the accused of the "nature and cause of the accusation," within the meaning of the constitution and of the rules of the common law, a little thought will make it plain, not only to the legal, but to all other educated, minds, that not only must all the elements of the offense be stated in the indictment, but that also they must be stated with clearness and certainty, and with a sufficient degree of particularity to identify the transaction to which the indictment relates as to place, persons, things, and other details. The accused must receive sufficient information to enable him to reasonably understand, not only the nature of the offense, but the particular act or acts touching which he must be

prepared with his proof; and when his liberty, and perhaps his life, are at stake, he is not to be left so scantily informed as to cause him to rest his defense upon the hypothesis that he is charged with a certain act or series of acts, with the hazard of being surprised by proofs on the part of the prosecution of an entirely different act or series of acts, at least so far as such surprise can be avoided by reasonable particularity and fullness of description of the alleged offense.' . . . United States v. Potter, 1 Cir. [C.C.Mass.], 56 F. 83, 89.''

■ The phrase "never had no gun" is just as applicable to August 30, 1973, as the statement that appellant "did not have a pistol on August 30, 1973", when he went to Gloria Birge's apartment. The trial court did not err in overruling the demurrer.

At the hearing on the motion for a new trial, appellant's astute and resourceful counsel, with commendable candor, told the trial judge:

"Mr. Calhoun: That's right. The facts are not in dispute—I mean don't take any of this—the boy doesn't have, as you know, the strongest kind of case and I am just doing everything possible in his behalf and that is the only two points I see in the case that has any chance of reversing the case, and that is probably pretty slim, but that is his case anyway."

■ The trial judge charged the jury of every facet of the law applicable to this case except he failed to charge the jury that the law requires unanimity before any verdict can be returned. Appellant did not reserve an exception to the oral charge and did not request a written instruction on the requirement of a unanimous verdict.

We have carefully searched the record for errors, any error, that injuriously af-fected the substantial rights of appellant and have found none.

The case is affirmed.

Affirmed.

All the Judges concur.