PHILLIP SIMPSON v. STATE.

176 So. 515.

En Banc.

Opinion Filed March 15, 1937.

Petition for Rehearing Granted April 22, 1937.

On Rehearing October 20, 1937.

PER CURIAM.—In this cause Mr. Chief Justice ELLIS and, Mr. Justice DAVIS and Mr. Justice TERRELL are of the opinion that the judgment of the Criminal Court of Record for Dade County should be reversed; while Mr. Justice WHIT-FIELD, Mr. Justice BROWN and Mr. Justice BUFORD are of the opinion that the judgment should be affirmed. When the members of the Supreme Court, sitting six members in a body and after full consultation, it appears that the

members of the Court are permanently and equally divided in opinion as to whether the said judgment should be affirmed or reversed, and there is no prospect of an immediate change in the personnel of the Court, the decree should be affirmed; therefore it is considered, ordered and adjudged under the authority of State, *ex rel.* Hampton, v. McClung, 47 Fla. 224, 37 So. R. 51, that the judgment of the Criminal Court of Record in this cause be and the same is hereby affirmed.

Affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

ELLIS, C. J.—Phillip Simpson was informed against in the Criminal Court of Record of Dade County for violating provisions of Chapter 16087, Laws of Florida 1933, known as the Uniform Narcotic Drug Act, in that he was charged with unlawfully selling on the 15th of March, 1934, "eight cigarettes containing cannabis, from which the resin had not been extracted." He moved to quash the information upon the grounds that it charged no offense under the law and its allegations were so vague and indefinite as to mislead the accused and to expose him to the danger of another prosecution for the same offense; and that the facts as alleged were insufficient to charge the defendant with a violation of the Uniform Narcotic Drug Act.

The motion to quash was overruled and the defendant went to trial upon the plea of not guilty. There was a verdict against the defendant of guilty as charged and a judgment entered that he was guilty of the sale of narcotics. He was sentenced to pay a fine of $500.00 and in default of the payment of that fine to be confined at hard labor in the Dade County Jail for a period of one year. Simpson

seeks to reverse the judgment upon writ of error which was taken by him a few days after his conviction.

Prior to the trial he moved for a bill of particulars to show the name or identity of the person to whom the drug was sold; when and at what place the sale was made; and the quantity, if any, of *Cannabis sativa I.* contained in the cigarette.

Chapter 16087, *supra,* provides in Section 2 of the Act that it shall be unlawful for any person to sell any narcotic drug except as provided in this Act. Paragraph 14 of Section 1 of the Act defines narcotic drugs to be: "coca leaves, opium, cannabis, and every substance neither chemically nor physically distinguishable from them." Paragraph 13 defines cannabis as including: "the following substances under whatever names they may be designated; the dried flowering or fruiting tops of the pistillate plant *Cannabis sativa I.,* from which the resin has not been extracted, (b) the resin extracted from such tops, and (c) every compound, manufacture, salt, derivative, mixture, or preparation of such resin, or of such tops from which the resin has not been extracted."

Cannabis is a genus of herbs of a certain type having as the only known species a variety known as *C. sativa* from which the hemp of commerce is manufactured.—Webster's International Dictionary. Hemp is defined by the same authority as a tall Asiatic herb (*C. sativa*), widely cultivated, the tough bast fiber of which is used for the manufacture of cloth, floor covering and cordage. The tender parts, its flowers and leaves, yield bhang and are employed in pharmacy under the name of cannabin.

The history of the plant *C. sativa* or hemp is very old. It seems to have originated in certain portions of temperate Asia, where it grew wild near the Caspian Sea in the region

■■■■■■■■

of the lower Ural and Volga. At an early date in its history a Chinese Emperor, about the twenty-eighth century B. C., advised his people to cultivate it for its fiber from which useful articles of commerce could be made. Its cultivation then extended into Persia and India, but is supposed not to have been cultivated in European countries until about the beginning of the Christian era. In the middle ages hemp (*C. sativa*) was cultivated in some western European countries for the seed, which were used for food.

Hemp is a dioecious plant, that is to say, its flowers are male and female. It is upon the pistillate, or female, stalk, that the flowering tops and the seeds are produced, which contain the elements of resin from which the narcotic drug is made.

*Cannabis sativa indica,* the variety grown in India, where the stalk sometimes reaches the height of twelve and fourteen feet, produces in the pistillate or female plant the seed and flowering tops, which coming to maturity and dried were commonly boiled with oil or butter producing an oleaginous substance, which mixed with other ingredients produced the narcotic drug hashish, bhang and gunjah. In Arabia it is called dawames or dawamesk, and mapouchari in Egypt. Some varieties of the plant are grown in other countries, in the United States and Mexico, where in the latter country the narcotic drug from the pistillate female plant is called marijuana.

Although different forms of hemp (*C. sativa*) have been described under different botanical names there are no essential differences in any of the specific characteristics and all cultivated and wild hemp is now recognized as belonging to one species, *Cannabis sativa L.* (See Ency. Brittannica.)

It appears that the narcotic or aphrodisiac qualities of

the drug were first discovered in India from the variety known as *Cannabis indica*. The effect of the use of the drug depends largely upon the individual. Among Asiatic peoples the dreams produced are usually of an erotic character but the principal effect is upon the mind which seems to lose the power of directing and controlling its thoughts. Then follows errors of sense, false convictions and the predominance of extravagant ideas where all sense of values seems to disappear. The addict loses all sense of time, where a minute may seem a year and an hour only an instant.

The deleterious, even vicious, qualities of the drug render it highly dangerous to the mind and body upon which it operates to destroy the will, causes one to lose the power of connected thought, producing imaginary delectable situations and gradually weakening the physical powers. The use and sale of it, therefore, is sought to be prohibited by the Uniform Narcotic Drug Act.

When the plant *Cannabis sativa,* or hemp, is cultivated, the staminate or male plant and pistillate or female plant grows together in the same drill, row or mound. The leaves of the male plant turn yellow and die before that of the female, which continues green for a month longer. The male plant is then cut down and the female continues to grow to maturity from which the seeds and dried flowering top, leaves and twigs are preserved when it is desired to use the latter for narcotic purposes and the former for stock food or propagation of the plant.

The plaintiff in error was charged with selling cigarettes containing cannabis from which the resin had not been extracted, but cannabis is the name of a plant which is dioecious in nature, the dried leaves and flowering tops of the female plant only contain the resin or the properties

from which the narcotic drug is produced. Paragraph 13 of Section 1 of Chapter 16087, *supra,* defined the narcotic drug cannabis as being the dried flowering or fruiting tops of the pistillate (or female) plant, *Cannabis sativa I.,* from which the resin has not been extracted. So it appears that referring only to the plant from which the resin has not been extracted in the information lodged against the accused it is uncertain and vague in the light of the definition of the narcotic drug as given by the paragraph 13 of Section 1.

The defendant is entitled to be informed of the nature and cause of the accusation against him. Section 11, Declaration of Rights, of Constitution. Reyes v. State, 34 Fla. 181, 15 South. Rep. 875; Smith v. Chase, 91 Fla. 1044, 109 Sou. Rep. 94; Vannoy v. State, 94 Fla. 1175, 115 South. Rep. 510; Smith v. McClelland, 99 Fla. 362, 126 South. Rep. 292.

The above authorities hold to the doctrine that unless the information or indictment charge the accused with the offense clearly and sufficiently so that he may know the nature and cause of the accusation against him he is entitled to his discharge.

While ordinarily it is sufficient in an indictment or information to charge an accused with the offense in the language of the statute denouncing such offense, yet unless the words of the Act are self explanatory, the facts and circumstances which constitute the definition of the offense charged must be alleged in the indictment or information so that the accused may be advised of the nature and cause of the accusation against him. Mills v. State, 58 Fla. 74, 51 South. Rep. 278; Reyes v. State, *supra.* Hamilton v. State, 16 Fla. 288; State v. Mayo, 121 Fla. 202, 163 South. Rep. 521.

We are of the opinion therefore that the information

was insufficient to clearly apprise accused of the nature and cause of the accusation against him because of the sale of cigarettes containing cannabis from which the resin had not been abstracted may relate to the resin of the staminate plant, the resin of which appears to be harmless.

Judgment reversed.

BROWN, J. (dissenting).—The information charges that the defendant, in Dade County on a named date, "did then and there unlawfully sell a certain narcotic drug, to-wit: eight cigarettes containing cannabis, from which the resin had not been extracted," contrary to the statute, etc. Section 2 of Chapter 16087, makes it unlawful to sell "any narcotic drug, except as authorized in this Act." The word "cannabis" as used in the Act is defined in Section 1, and Section 19 provides that information or indictments for enforcement of the Act need not negative any exception contained in the Act, the burden of proof being placed on the defendant to show that he comes within the exception.

While I concur in most of the foregoing illuminating opinion, I cannot concur in the conclusion reached. I think the information was sufficient to charge a violation of the Act.

## ON REHEARING.

CHAPMAN, J.—The original opinion in this cause affirmed the judgment of the court below by a divided court under the authority of State, *ex rel.* Hampton v. McClung, 47 Fla. 224, 37 Sou. 51.

Plaintiff in error, Phillip Simpson, was informed against in the Criminal Court of Record of Dade County for violating provisions of Chapter 16087, Laws of Florida, 1933, known as the Uniform Narcotic Drug Act, in that he was charged with the unlawful sale on March 15, of eight cigarettes containing cannabis, from which the resin had not been extracted.

The record shows that prior to the arraignment plaintiff in error filed a motion to quash the information on numerous grounds stated. The motion was by the lower court denied. He then seasonably applied to the Court for a bill of particulars, which was by the lower court denied. He filed a plea of not guilty and upon trial was by a jury found guilty and by the lower court sentenced to pay a fine of $500.00 or to serve a term in the State Prison for a period of one year. Plaintiff in error sued out writ of error to this Court and here seeks to have the judgment reversed.

The motion to quash the indictment is assigned as error by defendant below. We have examined the motion to quash and the six grounds or reasons therefor.

Plaintiff in error emphasizes the rule laid down in Lamb v. State, 90 Fla. 844, 107 Sou. Rep. 530, and Elliott v. State, 77 Fla. 611, 82 Sou. Rep. 139. We have examined the authorities cited in connection with the legal insufficiency of the indictment and fail to find reversible error committed by the lower court in entering the order overruling the motion to quash. See Butler v. Perry, 67 Fla. 405, 66 Sou. Rep. 150 (affirmed 240 U. S. 328, 36 Sup. Ct. Rep. 258, 60 L. Ed. 672); Jarvis v. State, 73 Fla. 635, 74 Sou. Rep. 794; Crooke v. Van Pelt, 76 Fla. 20, 79 Sou. Rep. 166.

Plaintiff in error complains further that the lower court committed reversible error in not granting his motion for a bill of particulars seasonably presented. This Court has had occasion, from time to time, to pass upon similar questions. The law upon this question is well settled. In the suit of Mathis and Mathis v. State, 45 Fla. 46, 34 Sou. Rep. 287, dealing with this identical question, the Court said:

"An application for a bill of particulars in a criminal case is not founded upon a legal right, but is a matter rest-

ing within the sound discretion of the court, depending entirely upon the nature and circumstances of each particular case as they appear to the court before whom the trial is had, and the refusal of the trial judge to grant such a motion will not be disturbed or reversed by an appellate court, unless there was an abuse of such discretion."

See: Thalheim v. State, 38 Fla. 169, 20 Sou. Rep. 938; Thomas v. State, 74 Fla. 200, 76 Sou. Rep. 780. We fail to find error in connection with this adverse ruling.

The following charge to the jury is assigned as error:

"It is unlawful in this State for any person to sell narcotic drugs, except a duly licensed manufacturer, wholesaler or apothecary." * * *

"The Court charges you, gentlemen, that the drug known as cannabis, from which the resin has not been extracted, is a narcotic drug."

The rule seems to prevail that in considering the correctness of a charge of a court to the jury the charge should be considered as an entirety and not single charges pointed out and made the basis for an assignment. The entire charge being considered, we fail to find error in connection therewith. In the suit of Lewis v. State, 55 Fla. 54, text page 63, 45 Sou. Rep. 998, this Court said:

"It is settled law in this court that the passing upon a single instruction or charge it chould be considered in connection with all the other instructions and charges bearing on the same subject, and if, when thus considered, the law appears to have been fairly presented to the jury, an assignment predicated upon the giving of such instruction or charge must fail, unless under all the peculiar circumstances of the case the court is of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury. Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, and authorities therein cited;

Davis v. State, 54 Fla. 34, 44 South. Rep. 757; Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761; Crosby v. Aby, decided here at this term."

It seems that substantial justice was awarded in the court below and the judgment appealed from is hereby affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, and BUFORD, J. J., concur.

BROWN, J. (concurring).—Paragraph 14 of Section 1 of Chapter 16087 provides that: "Narcotic drugs means coca beans, opium, cannabis, and every substance neither chemically nor physically distinguishable from them," and Section 2 makes it unlawful to sell any "narcotic drug" except as expressly authorized in the Act. The word "Cannabis" as used in the Act is defined in paragraph 13 of Section 1. And Section 19 providing that information or indictments for the enforcement of the Act need not negative any exception contained in the Act, the burden of proving that he falls within any such exception being upon the defendant. I think therefore the information was sufficient.