80 So.2d 501

### Lewis R. GAYDEN
### v.
### STATE.
### 3 Div. 722.

Supreme Court of Alabama.

May 12, 1955.

Robt. Straub, Asst. Atty. Gen., and Wm. F. Thetford, Circuit Sol., Montgomery, for the petition.

Hill, Hill, Stovall & Carter, Hill, Hill, Whiting & Harris, Montgomery, opposed.

SIMPSON, Justice.

The writ of certiorari to the Court of Appeals was granted and on a studious consideration of the case the judgment of that court will be ordered affirmed.

The opinion of the Court of Appeals impresses us as such an apodictical application of the fundamental principle of all free governments that the law secures to every person who is brought to trial on a charge of crime that the acts which constitute his alleged guilt shall be set forth with reasonable certainty in the indictment he is called upon to plead to, that, except for the urgent argument of counsel and the dissenting opinion, further elaboration would seem a redundancy.

Indictments must always conform to the mandates of our organic law. The emphasis in our cases "that in all criminal prosecutions, the accused has the right * * * to demand the nature and cause of the accusation" now § 6 of the Constitution of 1901—is not meaningless tautology, but one of the cornerstones of our Bill of Rights. As was observed by the late lamented Mr. Justice Brown in Spooney v. State, 217 Ala. 219, 222–223, 115 So. 308, 312;

"'* * * It is but an expression of the fundamental principle that inspired civilized man to form a government, the ultimate purpose of which is to protect the individual in working out his destiny, and finds expression in. our Constitution in these words: "That in all criminal prosecutions the accused has a right to be heard by himself and counsel, or either; * * * and he shall not be compelled to give evidence against himself, nor be deprived of life, liberty, or property, except by due process of law." * * * Constitution of Alabama 1901, §§ 6, 13. * * *

"'The manifest purposes of the quoted constitutional provisions, where life, liberty, and property are affected, are to secure the citizen against the *arbitrary action of those in authority,* and to place him under the protection of the law.' * * *'"

And that provision and the others of our Bill of Rights "are to be largely and liberally construed in favor of the citizen." Dorman v. State, 34 Ala. 216, 238.

We are further restrained in this case by the requirements of the Fourteenth Amendment to the Constitution of the United States. The following utterances by our Federal courts are pertinent: "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." Cole v. State of Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644. "The petitioner charged that he had been denied any real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process * * *." Smith v. O'Grady, Warden, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859. "An intelligent and full understanding by the accused of the charge against him is a first requirement of due process." Bergen v. United States, 8 Cir., 145 F.2d 181, 187.

Regardless of some ill-considered, loose expressions in some of the cases, the law

is and always has been that it is not enough to charge against a defendant a mere legal conclusion as justly inferential from facts not set out in the indictment. United States v. Almeida, 24 Fed.Cas. pages 775, 776, No. 14,433.

"In order to properly inform the accused of the 'nature and cause of the accusation,' within the meaning of the constitution, and of the rules of the common law, a little thought will make it plain, not only to the legal, but to all other educated, minds, that not only must all the elements of the offense be stated in the indictment, but that also they must be stated with clearness and certainty, and with a sufficient degree of particularity to identify the transaction to which the indictment relates as to place, persons, things, and other details. The accused must receive sufficient information to enable him to reasonably understand, not only the nature of the offense, *but the particular act or acts touching which he must be prepared with his proof; and when his liberty, and perhaps his life, are at stake, he is not to be left so scantily informed as to cause him to rest his defense upon the hypothesis that he is charged with a certain act or series of acts, with the hazard of being surprised by proofs on the part of the prosecution of an entirely different act or series of acts,* at least so far as such surprise can be avoided by reasonable particularity and fullness of description of the alleged offense." (Italics supplied.) United States v. Potter, 1 Cir., 56 F. 83, 89.

See also Williams v. State, 12 Tex.App. 395.

The two counts of the indictment under consideration are numbers 5 and 6, as follows:

"Count 5: The Grand Jury of said County further charge that, before the finding of this indictment, Lewis R. Gayden, alias L. Ruben Gayden, whose name is to the Grand Jury otherwise unknown, did obtain a narcotic drug, to-wit: opium, by fraud, deceit, misrepresentation or subterfuge, or by the forgery or alteration of a prescription or written order, or by the concealment of a material fact, or by the use of a false name or the giving of a false address;

"Count 6: The Grand Jury of said County further charge that, before the finding of this indictment, Lewis R. Gayden, alias L. Ruben Gayden, whose name is to the Grand Jury otherwise unknown, did obtain a narcotic drug, to-wit: Morphine, by fraud, deceit, misrepresentation or subterfuge, or by the forgery or alteration of a prescription or written order, or by the concealment of a material fact, or by the use of a false name or the giving of a false address".

For a better understanding of the question, a breakdown of the various alternatives (eleven in number) prescribed by the statute and charged in the indictment would be useful. Rather than charging these various alternatives in the two counts of the indictment, suppose the defendant had been charged, as would have been possible, in twenty-two counts, or in twenty-two indictments; that in eleven of these the defendant is charged with obtaining morphine and in the other eleven with obtaining opium. The indictment or counts so charging in their numerical order would be that the prescribed drug was obtained by:

1. "Fraud."

2. "Deceit."

3. "Misrepresentation."

4. "Subterfuge."

5. "Forgery of a prescription."

6. "Forgery of a written order."

7. "Alteration of a prescription."

8. "Alteration of a written order."

9. "Concealment of a material fact."

10. "Use of a false name."

11. "Giving of a false address."

The effect of the argument by the State and the dissenting opinion is that a defendant in Alabama can be put to trial on the above twenty-two charges without any additional information in any. of the instances as to the acts he is charged with having committed because (1) the charges are in the words of the statute and (2) the crime charged is one against the public—a rather unusual innovation in criminal pleading, in our mind.

By no means do we intend to detract from the general rule that it is sufficient to charge the elements of a statutory offense in the words of the statute. In passing, however, it is well to note that the real contention before us is not that the indictment does not charge an offense, but that the defendant is not apprised of the thing or things that he is alleged to have done in such a way as that they amounted to a crime. Stated another way, it may be conceded that the defendant is sufficiently informed of the crimes with which he is charged, but it by no means follows that he has been sufficiently informed of the acts which allegedly constituted those crimes. As example, if the indictment had charged that the defendant "did commit murder," he would be informed of the crime charged against him, but no student of the law with the slightest conception of constitutional liberty would suggest that he could be put to trial on such an indictment against his will. See 1 Wharton, Criminal Proceedings, § 270 (10th Ed., 1918), and authorities supra. So, a parallel to the general rule that a crime may be charged in the language of the statute is another contemporary and equally important principle that it is not sufficient if to do so would deprive the defendant of a constitutional right. As was said in United States v. Simmons, 96 U.S. 360, 24 L.Ed. 819:

> "But to this general rule there is the qualification, fundamental in the law of criminal procedure, that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defence, and plead the judgment as a bar to any subsequent prosecution for the same

offence. An indictment not so framed is defective, although it may follow the language of the statute."

The following statements illustrate when an indictment may and may not properly be drawn in the words of the statute: "Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." United States v. Hess, 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516. "It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars. * * * A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances." United States v. Cruikshank, 92 U.S. 542, 559, 23 L.Ed. 588 (this case apparently decided before the practice of using bills of particulars became prevalent in federal courts, 4 Barron, Federal Practice and Procedure, p. 32). See also State v. Seay, 3 Stew. 123, 131; Danner v. State, 54 Ala. 127; Grattan v. State, 71 Ala. 344; Rivers v. State, 97 Ala. 72, 12 So. 434. These two related principles are so well understood it is hardly necessary to mention them except to point out that there is nothing magical about the words of the statute concerning an indictment charging in that language when a person's constitutional rights are involved.

The classification of the offenses charged in the indictment as against the "public" rather than against "persons" or "persons and property" in order to avert specificity of allegation is by no means persuasive. We have found no case nor have we been directed to one which asserts the proposition that the defendant is entitled to less (or no) constitutional protection when he is charged with a crime against the public.

My brethren of the minority have evidently been led astray by the recognized rule that when a crime is against the person the indictment must allege the name of the person and when it is against property the owners of the property must be stated. But it is a pure illusion to say that under our cases when persons or property are involved in crimes "against the public" the persons or owner of the property need not be set forth in the indictment. As a general proposition, it may be safely asserted that in crimes against property an essential element is that the property involved is not that of the defendant and so to allege that the property belonged to a particular person shows it not to have been the property of the defendant. But if that were the only office of the allegation it could be accomplished by other means. The fundamental reason, as we see it, that the names of persons must be alleged in these two instances is not by reason of any magical classification of the offenses, but because by the very nature of the crimes it is generally necessary to make such allegations in order to inform the defendant of the acts he is charged with having committed.

To say, as does the minority opinion, that less specificity of allegation is required where the indictment charges a so-called "public offense" than an offense against "persons" or "persons and property" is, to our minds, a complete non sequitur of the constitutional mandate that every defendant is entitled to know with reasonable certainty the nature and cause of the accusation he is to defend against.

The theory is illustrated in one of our Code sections. Section 245, Title 15, provides in substance that when an offense has been committed upon or in relation to quasi public property or belongs to an association or collection of individuals, the indictment need not allege the ownership, but the property must at least be described by the name by which it is commonly known "or in any other manner which *may sufficiently identify the property.*"

Likewise apposite is the holding in Grattan v. State, 71 Ala. 344, where the indictment merely charged the defendant did "unlawfully and knowingly buy cotton in the seed." The court held:

> "In our judgment, the ownership of the cotton alleged to have been purchased by the defendant should have been averred, or else the *person from whom* the purchase was made should have been stated.

> "* * * An averment of ownership, in our judgment, is just as essential to certainty in this case, as in that of receiving stolen goods, burglary, arson, or larceny. A just regard for the analogies of the law of pleading, in the absence from the Code of a special form, therefore, requires it; *or else* there should have been an averment of the name of the person from whom the commodity was purchased. *Either* would be sufficient to obviate any objection based upon a want of certainty in the statement of the offense charged in the indictment. * * *" 71 Ala. at pages 347–348.

Thus it seems that the rule requiring the allegation of the name of the owner of the property was intended to inform the defendant rather than to satisfy formalism. Though steadfastly maintaining that the classification of offenses is immaterial with reference to definiteness in an indictment, the essential being that reasonable certainty of allegation is required in all cases, it is to be noted that the crime charged in the Grattan case is more in the nature of an offense against the "public" rather than one against "property" or "persons."

In Rivers v. State, 97 Ala. 72, 12 So. 434, it was charged that the defendant offered one Warren three dollars in money, "with intent to induce or influence said Warren to commit a certain crime punishable as a felony, to wit, the crime of perjury * * *." Again insisting that classification is immaterial, it will be noted that this is a crime against the "public." The charge is more certain than the twenty-two charges lodged against the defendant in the case before us. Yet the court held it to be constitutionally deficient for failure to allege the facts to be sworn to, the person

or court before whom the oath was to be taken, and the legal proceedings involved and the names of the parties.

The case of Barnett v. State, 54 Ala. 579, involved a charge of unlawfully uttering a paper to serve the purpose of money. Again insisting that classification makes no difference, it would seem that this was a crime against the public. There the court stated:

"It is a general rule of criminal pleading, that if written instruments, or papers which may be written or printed, enter into the gist of the offense—if the offense consists in the making, utterance or publication of such instruments, they must be set out in words and figures in the indictment. The most frequent application of the rule is to indictments for forgery, libel, sending threatening letters, &c. * * * In these cases the offense depends wholly on the character of the instrument. The court can determine only from the instrument, whether it is of the character of which forgery can be committed, or whether its matter falls within the legal definition of libellous; or whether the letter is within the statute punishing the offense. *The character of the paper is not the gist of this offense*—whatever may be its character, if issued or circulated to answer the purposes of money, without authority of law, the offense is complete. It is the purpose for which it is issued or circulated and the absence of legal authority for its issuance or circulation that constitutes the offense. If this is its purpose, its form, or its contents, is not material. If a particular form, or particular contents were essential, the statute would be easy of evasion, and the community subject to all the evils it was designed to remedy. * * * So the form or contents can not, as a matter of law, negative the criminal purpose. *The indictment should so describe the paper that the defendant will be informed of the facts relied on to constitute the offense and that he may be prepared to make his defense.* The

indictment in this case sets out a copy of the paper, and thereby fully informs the defendants and the court of the facts relied on as making the offense. It could not have been more particularly described. Any description identifying it, would have been sufficient." (Italics supplied.)

True, as pointed out in the opinion of the minority, the defendant in the case at bar is not charged with forgery, etc., but only with obtaining the drugs by such means. But in the Barnett case the instrument involved was not the "gist of the action" either, but the court said the paper had to be described. In the Grattan case the ownership of the cotton was not important, but the court said that the indictment should charge from whom the defendant was alleged to have bought it. And in the Rivers case the defendant was not charged with perjury, but the court held that the facts would have to be alleged which it was claimed would have amounted to perjury. *A fortiori*, therefore, the defendant at bar cannot be properly charged with unlawfully obtaining a drug by fraud, or forgery, or misrepresentation, etc., without the indictment setting out the facts which constituted the alleged crimes.

It will be noted also that the defendant is charged with obtaining the drugs by "use of a false name." Section 259 of Title 15, Code 1940, contains three forms involving false pretenses. We note that forms 59 and 60 set out the name used and the amount received, and form 61 sets out the name used and the substance of the instrument used in the alleged crime. The indictment in the instant case does not conform in principle to these approved forms.

An indictment somewhat similar to but more specific than the one in the case at bar was held to be defective under the Fifth and Sixth Amendments of the Constitution of the United States. Skelley v. United States, 10 Cir., 37 F.2d 503.

The opinion of the minority indicates that cases from other jurisdictions are not persuasive, but proceeds to cite some as

supportive of its holding. Simpson v. State, 129 Fla. 127, 176 So. 515, 516, is of no help to that end. The indictment in that case charged the defendant with selling "eight cigarettes containing cannabis, from which the resin had not been extracted." It also charged that the act was committed on the 15th day of March, 1934. Without approving the indictment in that case, it is readily seen that it is much more definite and certain than any of the twenty-two charges leveled against the defendant in the case before us.

The case of People v. Lee Foon, 275 N.Y. 229, 9 N.E.2d 847, is also cited by the minority, but it hurts more than helps their cause. The dissenting opinion quotes only the first sentence of a paragraph in that case. The entire paragraph reads:

"The information sufficiently stated the crime, giving the defendant notice that he was charged with having in his possession a narcotic drug. The law defined what was meant by a 'narcotic drug' so that the information did not have to restate it. *The information stated the date, place, and the offense,* which was a compliance with the requirement of section 742 of the Code of Criminal Procedure. *Had the defendant needed more specific information, he could have moved to this purpose or asked for a bill of particulars.* * * * " (Italics supplied.)

It is also suggested that we should follow the New Mexico form which is asserted to be, "that A. B. did falsely make (or alter) a prescription for a narcotic drug." 1953 Comp. § 54–7–40. If we are to learn anything about criminal procedure from New Mexico, it would seem that a better place to start would be with the following Code provision:

"When an indictment or information charges an offense in accordance with the provision of section 42–607 (41–6–7), but fails to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense, or to give him such information as he is entitled to under the Con-

stitution of this state, the court may, of its own motion, and shall, at the request of the defendant, order the district attorney to furnish a bill of particulars containing such information as may be necessary for these purposes; or the district attorney may of his own motion furnish such bill of particulars." 6 New Mexico Statutes 41–6–8(1).

That a bill of particulars may supplement a vague and indefinite indictment so as to afford an accused due process of law is well settled, People v. Bogdanoff, 254 N.Y. 16, 171 N.E. 890, 69 A.L.R. 1378; Commonwealth v. Jordan, 207 Mass. 259, 93 N.E. 809; Eagleston v. United States, 9 Cir., 172 F.2d 194, certiorari denied, 336 U.S. 952, 69 S.Ct. 882, 93 L.Ed. 1107, but a defendant in our jurisdiction is not afforded the benefit of such procedure. So we must advert to the original thesis that if his constitutional rights are to be protected, such matters must be set out in the indictment.

It is but to repeat the axiomatic that due process requires that no person shall be deprived of life, liberty or property without a fair hearing, but one cannot have a fair hearing unless notified of the charges to be defended against. "Fraud," "misrepresentation" and "concealment of a material fact" and the other crimes charged are vague terms and no civil pleading could stand the test of apt demurrer if a complaint merely averred "plaintiff claims of defendant $100 for that defendant did take such amount of money from plaintiff by 'fraud' or by 'misrepresentation' or by 'concealment of a material fact' or etc." Certainly property cannot be of a higher value or entitled to greater protection in the eyes of the law than liberty.

With due respect for the dissenting opinion and the able author thereof, we are constrained to say that it impresses us as more significant for what it does not say than for what it undertakes to say. No analysis is made to demonstrate that the defendant could under our constitutional guaranties get a fair trial under the indictment as framed. But it is said that the opinion conforms to previous decisions of

this state "for over 100 years". In this there is disagreement, but to entertain such a view would be no more persuasive nor sustain the soundness of the theory. Wisdom sometimes drags its tardy feet and comes late, but when it comes it should not be rejected because prior generations have been deprived of its beneficent glow. The able solicitor who argues for the State says that the opinion of the Court of Appeals would commit the "prosecuting officials of this state upon an uncharted sea full of hidden rocks and shoals." This is a debatable question, but if so we would answer—if that be the sea of constitutional liberty then let us embark at once.

Affirmed.

LIVINGSTON, C. J., and MAYFIELD, J., concur.

LAWSON, J., concurs in the result.

STAKELY, GOODWYN and MERRILL, JJ., dissent.

MERRILL, Justice (dissenting).

The opinion which follows, except for the last five paragraphs, was prepared as the opinion of the Court, but it was not accepted by the majority.

The defendant was convicted of violating § 255, Title 22, Code of 1940, as amended, which is a part of the Narcotic Drug Act. The Court of Appeals held that the demurrer to Counts 5 and 6 of the indictment should have been sustained. The State filed a petition for certiorari to have that ruling reviewed by this Court and we granted the writ.

The Court of Appeals held Counts 1, 2, 3, 4 and 7 of the indictment good as against demurrer, following the case of Coshatt v. State, 37 Ala.App. 422, 69 So.2d 877, which is exactly in point, and other cases cited. The sufficiency of those counts is not now before us.

The question presented to us relates to that part of the opinion of the Court of Appeals which holds that Counts 5 and 6 were subject to demurrer because "The indictment * * * in no manner or means apprised the accused of the specific offense which he was called on to defend, nor did it give him any sort of notice of the circumstances upon which the prosecution was based."

The pertinent part of the statute, Code of 1940, Title 22, § 255, Pocket Part, reads: "Any person who possesses, sells, furnishes, or gives away any cocaine, alpha or beta eucaine, opium, morphine, heroin, or isonipecaine contrary to the provisions of this chapter, or obtains or attempts to obtain a narcotic drug by fraud, deceit, misrepresentation or subterfuge, or by the forgery or alteration of a prescription or written order, or by the concealment of a material fact, or by the use of a false name or the giving of a false address, is guilty of a felony, and upon conviction for the first offense shall be imprisoned for not less than two nor more than five years. * * *".

Counts 5 and 6 of the indictment were identical except that count 5 identified the drug as opium and count 6 substituted the word "morphine" for opium. Count 5 charged that the defendant "did obtain a narcotic drug, to-wit: opium, by fraud, deceit, misrepresentation or subterfuge, or by the forgery or alteration of a prescription or written order, or by the concealment of a material fact, or by the use of a false name or the giving of a false address."

Generally speaking there are three types of crimes under the laws of this State. They are:

1. Crimes against persons, examples of which are murder, assaults, rape, defamation, etc.

2. Crimes against persons and property, examples of which are robbery, larceny, false pretense, trespass by cutting timber, etc.

3. Crimes against the public, examples of which are gaming, violating the prohibition laws, practicing law, medicine, or dentistry without a license, vagrancy, and one like the case at bar, violating the narcotics law. Of course, as stated in Wharton's Criminal Law, Vol. 1, § 14, "All crimes

are crimes against the public. But crimes directly affecting persons or individuals are uniformly considered crimes against such person or individuals." Wherever in this opinion we refer to crimes against the "public" we are referring to the third type of crime listed supra as distinguished from crimes directly affecting persons or persons and property.

Counts 5 and 6 literally follow the language of the statute, and as stated in the opinion of the Court of Appeals, the general rule is that an indictment which substantially follows the language of the statute is sufficient. 12 Ala.Digest, Indictment & Information, ☞110(3). However, after recognizing the general rule, the Court of Appeals cites every case listed in Indictment & Information, ☞110(4) as exceptions to the general rule, except the case of Mitchell v. State, 248 Ala. 169, 27 So.2d 36, and Collins v. State, 28 Ala.App. 400, 185 So. 779 (Pocket Part), and that court, as well as we, recognize that they are not applicable to the question before us. It is fitting that we consider the cases cited in the opinion as exceptions, and as we shall demonstrate, there is a scarcity of cases where the offense was one against the "public". But first we note a few code sections from the Code of 1940, Title 15:

> Sec. 231. "An indictment must not be held insufficient, nor can the trial, judgment, or other proceedings thereon, be affected by reason of any defect or imperfection in any matter of form which does not prejudice the substantial rights of the defendant on the trial."

> Sec. 244. "When an intent to injure or defraud is necessary to constitute the offense, it is sufficient to allege an intent to injure or defraud generally, without naming the particular person, corporation or government intended to be injured, or defrauded."

> Sec. 247. "When the offense may be committed by different means, or with different intents, such means or intents may be alleged in the same count in the alternative."

> Sec. 249. "When offenses are of the same character, and subject to the same punishment, the defendant may be charged with the commission of either in the same count in the alternative."

We now proceed to analyze the cases cited in the opinion of the Court of Appeals. The case of State v. Brown, 1837, 4 Port. 410, was decided on the point that the indictment *failed* to follow the words of the statute. The court said: "The indictment in this case not conforming to the terms of the statute defining the offense, the court below should have arrested the judgment." The statement quoted in the opinion of the Court of Appeals was not necessary for a decision in that case.

The case of Turnipseed v. State, 1844, 6 Ala. 664, wherein the indictment was for inflicting cruel punishment upon a slave and was thus a crime against a person, was like the Brown case, supra, decided prior to the adoption of the chapter on indictments, which first came into the Code of 1852.

The indictment in Anthony v. State, 1856, 29 Ala. 27, charged "That Anthony, a slave, the property of Elias G. Hodges, did attempt to poison Elias G. Hodges, a white person, and Mary C. Hodges, a white person." The statute is set out in the first sentence of the opinion and a reading of it shows that the indictment did not follow the language of the statute.

In Carter v. State, 1876, 55 Ala. 181, the indictment was for illegal voting. The Court of Appeals is correct that this court held the indictment "should have shown that the election was one for county and state officers." But that averment was necessary if the statute was to be followed, because the statute, Code of 1867, § 211, stripped of qualifications said: "Every white male citizen of age of 21 years * * * is * * * a qualified elector, and may vote * * * for *all officers elective by the people.*" Emphasis supplied. The court said: "The indictment ought to have shown that the election (general or special) was one for county or state officers or for what officers it was held."

The indictment in Grattan v. State, 1882, 71 Ala. 344, attempted to charge an offense against person and property and the court correctly held that the ownership of the seed cotton which had been bought or the name of the vendor should have been alleged.

The next case cited is Watt v. State, 97 Ala. 72, 11 So. 901. That case holds that the indictment, drawn in identical compliance with the statute, was not subject to demurrer.

The charge in Miles v. State, 1891, 94 Ala. 106, 11 So. 403, was for defamation, which is an offense against a person. The court correctly ruled that the original affidavit was "insufficient to authorize the issue of a warrant of arrest."

In the case of Jackson v. State, 1938, 236 Ala. 75, 182 So. 83, the indictment charged that the accused, "'did possess, keep, own, set up, operate, or conduct, or did permit to be set up, operate, or conducted, a gambling device, contrary to law.'" The Court of Appeals had said:

> "A general form of indictment, like that here presented, would not with any degree of certainty inform the accused of what was intended. The only information it affords him is that he is accused generally of some offense; there is nothing in the count of the indictment tending in the least to meet the mandatory and necessary requirement of the Constitution, statute, supra (§ 6, Constitution of 1901; § 4529, Code of 1923 [Code 1940, Tit. 15, § 232]), and the uniform holdings of the appellate courts." [Parenthesis supplied.] Likos v. State, 28 Ala.App. 231, 182 So. 81, 82, certiorari granted 236 Ala. 77, 182 So. 82.

The Court of Appeals reversed both the Likos and the Jackson cases. On certiorari this Court said:

> "The indictment follows substantially the language of the statute, and though it is subject to the demurrable defect that it does not with certainty to a particular intent describe the gambling device, it charges every element of the offense, and does not embrace an act not denounced by the statute, and is sufficient, in the absence of appropriate objections, to support the judgment of conviction. Gaines v. State, 146 Ala. 16, 41 So. 865; Hornsby v. State, 16 Ala.App. 89, 75 So. 637. * * *

> "An indictment, to be free of demurrable defects, should describe the gambling device by name, or in the language of one of the subdivisions of section 1 of the act [Code 1940, Tit. 14, § 283] * * *." Jackson v. State, 236 Ala. 75, 182 So. 83.

This Court remanded both cases to the Court of Appeals whereupon they were both affirmed.

The offenses charged in the Jackson and Likos cases, supra, were offenses against the "public". The averments were in the alternative and no facts were set out. There is no contention in the instant case that the indictment fails to describe sufficiently or completely the narcotic which the defendant is alleged to have fraudulently obtained.

In Cheshire v. State, 1913, 8 Ala.App. 253, 62 So. 994, the indictment attempted to charge false pretense in securing money from an insurance company. We are impressed with and concur in the final statement in the short opinion of the court: "In fact, it [the indictment] is not (as set out in the record) an intelligible statement of any offense."

The indictment in State v. Dodd, 1919, 17 Ala.App. 20, 81 So. 356, followed the language of the statute and the Court of Appeals reversed the order of the lower court sustaining a demurrer to the indictment, even though the offense charged was against a person and property.

In the case of Jackson v. State, 1952, 36 Ala.App. 466, 58 So.2d 901, 902, the Court of Appeals held that the indictment charging malicious injury to property without stating the name of the owner of the property was demurrable. It was also said:

> "The statute as drawn is for the protection of the interest in property of

another person. While its tendency is to protect all property, the essential aim is for the protection of private interests in property. See Johnson v. State, 18 Ala.App. 70, 88 So. 348.

"When injury to the property of another is the offense charged, a material averment of the accusation is the identity of the owner. Such principle has been repeatedly enunciated in the opinions of this State. (Citing cases.)"

The indictment in Bazzell v. State, 1919, 16 Ala.App. 663, 81 So. 183, was for false pretense, an offense against persons and property. It did not follow the form prescribed by the statute. It charged the false pretense as having been made to one Wilson to get fertilizer from a fertilizer company or one Narramore, and the court pointed out the defect in the sentence following that part of the opinion quoted in the opinion of the Court of Appeals, viz.: "Where the indictment alleges that the false pretense was made to one person and that the goods were obtained from another, it is subject to demurrer, unless it shows some relation between the person to whom the pretense was made and the other, with reference to the title or possession of the goods."

In Addington v. State, 1916, 16 Ala.App. 10, 74 So. 846, 851, the court said: "The indictment is not subject to demurrer because several matters are alleged as false pretenses, some of which constitute false pretenses within the statute, and others do not. The averments as to those not within the statute will be treated as surplusage, unless they are descriptive averments. * * *"

It was held in Jones v. State, 1937, 28 Ala.App. 254, 182 So. 402, another false pretense case, that the counts in the indictment followed the code form and the demurrers to each were properly overruled.

The case of Holloway v. State, 37 Ala. App. 96, 64 So.2d 115, certiorari denied 258 Ala. 558, 64 So.2d 121, holds that the State failed to prove the material allegations of the indictment for false pretense and the defendant was due the general affirmative charge.

We now consider some of the cases dealing principally with crimes against the "public" where the indictment did follow the words of the statute.

In Allen v. State, 33 Ala.App. 70, 30 So.2d 479, 481, the accused was indicted for selling adulterated milk which is prohibited by § 188, Title 2, Code of 1940. The indictment charged that the accused " 'did sell an article of food, namely, milk, which was adulterated in that it contained added water, contrary to Title 2, Section 306 of the Code of Alabama 1940.' " The Court of Appeals held that the incorrect reference to the code section in the count was surplusage but the count "adequately informed the accused of the offense he was charged with committing, and the court properly overruled the demurrers thereto."

In Finley v. State, 28 Ala.App. 151, 181 So. 123, 124, the indictment charged five defendants with violating § 596, Code of 1923, of the Corrupt Practice Act, § 282, Title 17, Code of 1940. Twenty-five grounds of demurrer were held properly overruled and the court said:

"(2) The statute, supra, created a new offense, unknown to the common law, and describes its constituents, and the indictment, as we see it, charges the offense in the language of the statute, and sets out all the statutory elements creating the offense, and every necessary fact which was an ingredient thereof. It is not required that an indictment shall set up the proof necessary to a conviction; it has many times been held, it is sufficient if it charges the offense in the language of the statute."

The indictment in Gideon v. State, 28 Ala.App. 177, 181 So. 126, charged that the accused " 'did possess, keep, own, set up, operate, or conduct, or permit to be set up, operated or conducted a gambling device, towit: a machine mechanical device, contrivance, appliance, or intervention, in the use of which a consideration was paid or deposited, and there was gambling or the hazarding of small amounts of money or property to win larger amounts of money or property, against,' " etc.

The defendant demurred that the alleged device is not named or described to show that it is such a device as prohibited by law; that it does not aver facts to show that it was unlawful for the defendant to possess it; "that the indictment is in the alternative, and some of the acts charged are innocent acts." The Court of Appeals said, after quoting the general rule:

"The indictment here follows, literally, so far as we can see, subsection (a) of section 1 of the act of the Legislature approved July 25, 1931, Gen. Acts Ala. 1931, p. 806 [Code 1940, Tit. 14, § 283], in describing the gambling device the possession of which is denounced by section 3 of the same act, page 807 [Code 1940, Tit. 14, § 284]. The demurrer was properly overruled. Code 1928, § 4529 [Title 15, § 232, Code of 1940]."

In Harris v. State, 28 Ala.App. 528, 189 So. 787, 789, it was charged that the defendant " 'did (set up) carry on, or was concerned in setting up or carrying on a lottery or device of like kind (or gift enterprise), or a scheme in the nature of a lottery (or gift enterprise); or did sell or dispose of a lottery or gift enterprise ticket, or ticket in a scheme in the nature of a lottery (or gift enterprise; or did receive money or take an order for a lottery or gift enterprise) ticket, or ticket in a scheme in the nature of a lottery (or gift enterprise) or was interested or concerned in selling or disposing of a ticket in a lottery (or gift enterprise), or a scheme in the nature of a lottery (or gift enterprise), or did act for or represent another person in selling or disposing of such a ticket, against' ", etc.

The Court of Appeals said:

"We find there was no error in the action of the court in overruling the demurrers, as the complaint filed by the Solicitor substantially followed the wording of the section of the Code upon which the prosecution was based. The complaint was in one count and charged in the alternative the several offenses denounced and made unlaw-ful by the statute." The statute was § 4247, Code of 1923, Title 14, § 275, Code of 1940.

The conviction was affirmed.

The indictment in Davis v. State, 16 Ala. App. 149, 75 So. 825, 826, was for train wrecking. The Court of Appeals said: "The several counts in the indictment follow almost literally the words of the statute. Acts 1911, p. 381. The demurrers thereto were properly overruled."

In Thomas v. State, 156 Ala. 166, 47 So. 257, 258, the indictment charged that the defendant " 'willfully administered to Onether Crawford, who was a pregnant woman, a drug or substance, or used or employed an instrument, to procure her miscarriage; the same not being necessary to preserve her life, and not done for that purpose, against' ", etc.

Judge Anderson wrote:

" * * * in cases where the statute, not only prescribes a punishment but also defines the offense, notwithstanding a similar offense existed at common law, we think the indictment would be sufficient if the offense is described in the language of the statute or in words conveying the same meaning. Section 4898 of the Code of 1896; Clark v. State, 19 Ala. 552. Speaking of indictments for this identical crime, Mr. Bishop in his work on Statutory Crimes (section 754), says: 'Follow the statute.—This rule is specially safe and in most instances sufficient, in various forms of the offense now under consideration. Rarely will the allegations require expansion beyond the statutory terms.' We do not think it necessary to name the drug or instrument, nor to aver how the drug was administered or the instrument was used."

In Riley v. State, 32 Ala.App. 180, 23 So.2d 10, 11, the accused was charged with violating the Alabama Food and Drug Act, Code of 1940, Title 2, Article 18, § 304. Twenty-seven grounds of demurrer were overruled. The Court of Appeals said:

"(1) All that seems necessary to be said is, that so far as we can discern, the complaint on which appellant was put to trial substantially followed the wording of the Statute denouncing the offense. And this, according to numerous decisions of this court, is sufficient. * * * The demurrers to the complaint were overruled without error."

The indictment in Clark v. State, 21 Ala.App. 207, 106 So. 872, under Title 29, § 131, charged that the accused " 'did manufacture, sell, give away, or have in possession a still, apparatus, appliance, or device or substitute therefor, to be used for manufacturing prohibited liquors or beverages, against' ", etc.

The grounds of demurrer were that the indictment is vague and uncertain, failed to inform the defendant of the offense with which he is charged and the indictment failed to describe the still, apparatus, appliance, or device, or substitute therefor and that it charged no offense. The Court of Appeals said: "Demurrers were interposed to count 2, but were overruled, and properly so."

The indictment in Porter v. State, 20 Ala. App. 74, 101 So. 97, 98, charged distilling and possession of a still. The court said: "(2) The demurrer to the indictment was properly overruled. Each of the two counts of the indictment followed substantially the language of the statute defining the offense, and was sufficient."

Nix v. State, 27 Ala.App. 94, 166 So. 716, 717, while not strictly a case in which a "public" offense was involved, was concerned with the giving of a worthless check but the complaint did not set the check out verbatim. The court said:

"We are of the opinion that the affidavit is sufficient in form and substance. It not only substantially follows the language of the statute, which of itself is sufficient, Oliver v. State, 16 Ala.App. 533, 79 So. 313, and cases cited; but it also states the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which would enable the court, on conviction, to pronounce the proper judgment."

In Jordan v. State, 26 Ala.App. 122, 156 So. 642, the court said:

"Appellant was indicted for a violation of the provisions of Code 1923, § 3465 (Code of 1940, Title 14, § 72), viz. demanding money for his vote or official influence, etc., as a member of the Legislature, etc. * * * Each of the five counts of the indictment followed substantially the language of the Code section named; and all of the demurrers interposed were properly overruled." [Parenthesis supplied.]

Perhaps we should mention some of our code forms. There is no particular magic about one of these forms. The legislature merely prescribed a short, acceptable statement of pleading to be used in indictments for certain offenses. This court said in Jinright v. State, 220 Ala. 268, 125 So. 606, 607,

"The power of the Legislature to prescribe the form of indictment is part of its general legislative power. Broadly speaking, it is curtailed only by constitutional limitations, such as the right of the accused to be informed of the nature and cause of the accusation, and to have a copy of same. Bill of Rights, § 6.

"The indictment must reasonably disclose an offense known to the law in force during the period covered thereby, and reasonably inform the accused of the accusation he is called upon to answer. Subject to these qualifications, statutory forms have from our early jurisprudence been held sufficient, although facts essential to a conviction may be omitted. * * *"

Thus we see that Section 6 of the Constitution of Alabama guarantees the right of the accused to be informed of the nature and cause of the accusation and it is

said in the opinion of the Court of Appeals that the counts under consideration "in no manner or means apprised the accused of the specific offense which he was called on to defend."

Our code forms of indictment are found in Code of 1940, Title 15, § 259. In the light of the constitutional requirement and the objection in this case as to lack of information, we mention four forms, all of which deal with "public" offenses.

Form 22.—Betting with a minor: "A. B., being of full age, bet with C. D., a minor." The statute, § 268, Title 14, contains several alternatives.

Form 71.—Lotteries: "A. B. set up, or was concerned in setting up or carrying on, a lottery." The statute, § 275, Title 14, is very comprehensive and the word "or" is used at least 25 times.

Form 85.—Physicians: "A. B. did practice medicine or surgery without a license and contrary to law." The accused is not informed as to whom he may have treated or offered to treat, what system of treatment he is charged with using, whether he is charged with having written prescriptions and if so, how many, or where it was, or what act or acts are charged to him, but we have used the form for many years.

Form 111.—Vagrants: "A. B. was a vagrant." The statute, § 437, Title 14, contains 13 subdivisions, proof of any one of which will support a conviction for vagrancy. The accused would not be informed, for example, as to whether he was charged with being an able-bodied idler, a bootlegger, a drunkard, a professional gambler, a beggar or a prostitute, but the indictment in the words of the form has been held good where it was urged that it violated the Constitutions of Alabama and of the United States.

We have read many cases from other jurisdictions but find that they are of little help when it comes to deciding a question which is essentially one of the proper form of pleading in this state. For example, § 422 (now § 3305) of the Public Health

Law of New York, McK. Consol. Laws, c. 45, which is the same as our § 254, Title 22, provided:

"Acts prohibited. It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this article."

The charge was that the defendant " 'unlawfully did possess and have control of a certain narcotic drug.' " In the face of objections that no crime was charged and that it was not alleged what narcotic drug was possessed, five members of the court held:

"The information sufficiently stated the crime, giving the defendant notice that he was charged with having in his possession a narcotic drug." People v. Lee Foon, 275 N.Y. 229, 9 N.E.2d 847.

In New Mexico, where the statute is practically identical with ours, the form for indictment for false making of a prescription is, "That A. B. did falsely make (or alter) a prescription for a narcotic drug" and for uttering a false prescription, "That A. B. did utter and publish as true a certain false prescription for a narcotic drug, well knowing the same to be falsely made (or altered)." Vol. 8, New Mexico Statutes 1953, § 54-7-40. We do not cite these indictments with approval but merely to demonstrate the divergence in the requirements of some states and the contrast with the model from Nevada which appears in the opinion of the Court of Appeals.

The Supreme Court of Florida had trouble with the question of an indictment under their Uniform Narcotic Drug Act, F.S.A. § 398.01 et seq. In the case of Simpson v. State, 129 Fla. 127, 176 So. 515, 517, the defendant was charged with unlawfully selling " 'eight cigarettes containing cannabis, from which the resin had not been extracted.' " The defendant urged in his motion to quash the indictment that the indictment charged no offense, the allegations were so vague and indefinite as to

mislead him and expose him to the danger of another prosecution for the same offense, and the allegations were insufficient to charge a violation of the Uniform Narcotic Drug Act. The court first said:

"The defendant is entitled to be informed of the nature and cause of the accusation against him. Section 11, Declaration of Rights of Constitution; (Citing cases).

"The above authorities hold to the doctrine that unless the information or indictment charge the accused with the offense clearly and sufficiently so that he may know the nature and cause of the accusation against him he is entitled to his discharge.

"While ordinarily it is sufficient in an indictment or information to charge an accused with the offense in the language of the statute denouncing such offense, yet unless the words of the act are self-explanatory, the facts and circumstances which constitute the definition of the offense charged must be alleged in the indictment or information so that the accused may be advised of the nature and cause of the accusation against him. (Citing cases.)

"We are of the opinion therefore that the information was insufficient to clearly apprise accused of the nature and cause of the accusation against him because of the sale of cigarettes containing cannabis from which the resin had not been abstracted may relate to the resin of the staminate plant, the resin of which appears to be harmless.

"Judgment reversed."

But on rehearing the court said:

"We have examined the authorities cited in connection with the legal insufficiency of the indictment and fail to find reversible error committed by the lower court in entering the order overruling the motion to quash. * * *

"It seems that substantial justice was awarded in the court below, and the judgment appealed from is hereby affirmed."

There are few if any crimes against the "public" which have more serious consequences than the illegal traffic in and peddling of narcotic drugs. The legislature enacted a law against the evil using ordinary understandable language. The act is comprehensive but not nearly as extensive as some other statutes governing "public" offenses, indictments for which we have held sufficient over and over again when the language of the statute was followed. It has never been required in this state that proof need be pleaded in the indictment. We think the following statement in the opinion aptly shows wherein the Court of Appeals erred in holding Counts 5 and 6 to be insufficient.

"We need not cite any of the numerous authorities which hold that in prosecutions for forgery the instrument alleged to have been forged must be set out in the indictment either in haec verba or according to its legal tenor or effect."

The appellant is not charged with forgery which in this state consists of three degrees. The charge is obtaining a particular narcotic drug under a section of our Uniform Narcotic Drug Act, penalizing the obtaining of this narcotic drug by certain *means*, one of which is the forgery or alteration of a prescription or written order. The indictment charges one crime and the various acts set out in the indictment constitute the manner and way in which the accused allegedly committed said crime.

The indictment meets the requirement of § 232, Title 15, Code of 1940, which is cited by the Court of Appeals.

The Code of 1940 deals with Indictments in Title 15, Chapter 11. Practically all of the sections, 227 to 259 inclusive first were codified in the Code of 1852. Some of the sections have been set out supra. It is obvious that the legislative intent for over 100 years has been to simplify our form of

pleading in indictments. It is a well-established rule of construction that even as to penal statutes, we should carry out the obvious intent of the legislature to be gathered from the words of the law; and the particulars as to time, place and circumstance, not constituting essential elements in the crime, may be dispensed with in the indictment by the statute and be left as matter of proof. Noles v. State, 24 Ala. 672. In Rivers v. State, 97 Ala. 72, 12 So. 434, this Court said: "We have held that under our system of pleading 'Indictments are rather a statement of legal conclusions than of facts.'"

The constitutionality of indictments dealing with "public" offenses which were not as specific as indictments dealing with offenses against persons or property has been conclusively settled by our decisions. We cite three such cases. In Burdine v. State, 1854, 25 Ala. 60, the indictment substantially in the language of the statute, charged that defendant and others "played at a game with cards, or dice, or at some device or substitute therefor, at a tavern, inn, storehouse for retailing spirituous liquors, or house or place where spirituous liquors were, at the time, retailed or given away, or at a public house, highway, or at some other public place, or at an outhouse where people resorted; against the peace and dignity of the State of Alabama."

The court said: "The form of indictment is in accordance with section 3506 of the Code, which provides, that where offences are of the same character, and subject to the same punishment, the defendant may be charged with the commission of either in the same count in the alternative. The objection to this provision, urged on the part of the appellant, is, that it is in violation of the tenth section of the first article of our bill of rights, which entitles the accused to be informed of the nature and cause of the accusation, and to have a copy thereof. The object of this clause of the constitution was, to enable every person, against whom a criminal prosecution was instituted, to defend himself against it if innocent; and a due regard to the intent and spirit of this provision would require us to pronounce against any indictment, whatever might be its form, which was obviously insufficient to secure this result. But the fact that the defendant may be charged with the commission of one or the other of two or more offences, which are specified with legal certainty in the indictment, does not render him the less able to defend himself against either of the charges which are alleged. It is true that he may be required to meet each one of the offences; but he would have been obliged to do this, if the indictment, instead of pursuing the form used, had been framed with different counts, alleging the commission of all the offences which are here charged in the same count. We do not think that any constitutional right of the defendant can be impaired by sustaining the indictment in its present form."

The short opinion in Coleman v. State, 1907, 150 Ala. 64, 43 So. 715, follows:

"Haralson, J. The indictment, in its first count, charged defendant in Code form, with selling whiskey without a license and contrary to law.

"The second count, a little more specific than the first, but containing the averments of the first, gave the name of the person to whom the liquor was sold, or for whom it was procured, or whom he aided in procuring the same.

"The first count was demurred to on the ground that the indictment failed to allege the name of the person to whom the alleged sale was made, and to whom and where the same was sold, or when the defendant procured or aided the party named in procuring the liquors.

"That the indictment is in Code form (No. 79), or, that it is not sanctioned by sections 5076 and 5077 of the Code of 1896, is not questioned; but the contention is, that the statute authorizing the form of indictment, and dispensing with any allegation as to the name of the person to whom the alleged sale was made, and when and where made, is unconstitutional and void, being in violation of the Bill of Rights, which secures to the defendant the right to be informed of the nature and cause of the accusation against him.

484

"This is not a new question, and has been long ago, and repeatedly, since, determined against the contention of appellant. Noles v. State, 24 Ala. 672; Mayo v. State, 30 Ala. 32; Cochran v. State, 30 Ala. [542] 546; Bailey v. State, 99 Ala. [143] 145 [13 So. 566]; Jones v. State, 136 Ala. [118] 122, 123, 34 So. 236; Guarreno v. State, [148 Ala. 637] 42 So. 833.

"Nor was it necessary to allege the name of the person to whom the liquor was sold, nor the particular time or place at which it was sold. Authorities supra; Caldwell v. State [146 Ala. 141], 41 So. 473; Lee v. State [147 Ala. 133], 41 So. 677."

We think the Coleman case and the Walker case, next cited, clearly show that the rule in the Grattan case, supra, does not apply to a "public" offense because the court in that case said, "The present indictment is for an illegal purchase by the defendant of property belonging to another. * * * An averment of ownership, in our judgment, is just as essential to certainty in this case, as in that of receiving stolen goods, burglary, arson or larceny." Those are crimes against property, while gaming, selling whiskey without a license and public drunkenness are strictly public offenses.

The opinion in Walker v. State, 150 Ala. 87, 43 So. 188, reads:

"Simpson, J. The appellant was indicted and convicted of the offense of appearing in a public place, etc., while intoxicated, under section 4656 of the Code of 1896.

"The only point insisted upon by the appellant is that section 4903, which dispenses with any more particular designation of the place than 'in a public place,' is violative of our Bill of Rights, securing to a defendant the right to be informed of the nature and cause of the accusation against him. This proposition has been thoroughly considered by this court, and the constitutionality of such provision upheld. Jones v. State, 136 Ala. [118] 123, 34 So. 236; Noles v. State, 24 Ala. 672; Elam v. State, 25 Ala. 53.

"There being no error in the record, the judgment of the court is affirmed."

We note in passing that a code form for public drunkenness came into the Code of 1907, and since that time it has been necessary to name the public place.

We have not found, nor have we been cited, any Alabama case where the offense was "public" that this court has nullified the indictment when it followed substantially the words of the statute defining the crime and setting the penalty therefor.

In 1860, Stone, J., in Lewis v. State, 35 Ala. 380, had this to say:

"Having shown that a slave may be guilty of an attempt to commit rape on a white female without actually assaulting her, if we were to go further and require that the indictment shall express the particular acts of which the attempt consists, *we should greatly innovate on our present brief and simple forms of indictment, and introduce a particularity of averment and description, which would in many cases amount to a denial of justice.*" [Italics supplied.]

To adopt and force upon the courts of this state the Nevada model of indictment as set out in the opinion of the Court of Appeals would upset, except as to code forms, what has been the established rule by statute and decision in this state for over 100 years.

The demurrer to counts 5 and 6 of the indictment was properly overruled. These counts follow the language of the statute and charge every element of the offense, and are sufficient under the decisions cited supra.

The judgment of the Court of Appeals should be reversed and the cause should be remanded.

The majority opinion strikes an appealing note; and were it not for the long-standing decisions of this court cited in this dissenting opinion, which seem to me to be conclusive of the question before us, I would join with the majority. My view is that if there is to be a change in the law now the wisdom and extent of such change are more properly addressable to the legislature than to the court. Clearly, provision could

and might well be made by legislative act requiring an indictment to recite details of the charge to be defended against or in some other way providing for furnishing an accused with such details, such as a bill of particulars.

Beginning with cases reported in 1853, 23 Ala., to 1916, 200 Ala., the question of the sufficiency of the indictment was the rule rather than the exception in criminal cases, and it has been raised many times in later Supreme Court and Court of Appeals cases. For the past 30 years, the question of the validity of an indictment has not recurred so often, because the law was generally considered settled in the minds of both bench and bar.

I fear that the result of the opinion of the majority will have a far-reaching effect which is both unsettling and bordering on disastrous. In view of the constitutional grounds assigned for holding the two counts bad in the instant case, can there be little doubt that all the accepted and previously approved indictments for violating the prohibition law, distilling, lottery laws, the code forms specified herein and many others not listed and particularly all of the indictments which follow the language of the statute, would fall for lack of "specificity", when the same rule as stated in the majority opinion is applied to them? It would seem that it would become the duty of an attorney defending his client under indictment in most criminal cases from this day forward to raise the question of the sufficiency of the indictment and hope for a favorable ruling irrespective of how many times the courts of this state had held it to be good and not violative of § 6 of the Constitution of Alabama or the Constitution of the United States.

There has always been a great difference in the amount of information required in indictments in the State Courts and those in the Federal Courts. Since the majority opinion is based largely on Federal cases, a proper question would seem to be,—at what point does the Alabama rule of pleading cease to prevail, and the Federal rule become a part of our pleading?

I, therefore, respectfully dissent.

STAKELY and GOODWYN, JJ., concur in the foregoing views.